**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 3/12/96**

**TENTH CIRCUIT**

———————————————

FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, )
)
    Plaintiff-Appellant and Cross-Appellee, )
)
v. )    Nos. 95-6111 and
)        95-6119
OFELIA SALAZAR, a/k/a Ofelia Lopez Corrales; MARGARITO )
SALAZAR; MANUEL JESUS CORRALES, )
)
    Defendants-Appellees, )
)
------------------------ )
)
LORETTA J. BYUS, Administratrix of the Estate of Thomas )
Edward Byus, deceased, )
)
    Intervenor-Appellee and Cross-Appellant. )

———————————————

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-93-2007-A)**

———————————————

Glynis C. Edgar (Reggie N. Whitten with her on the briefs) of Mills & Whitten, Oklahoma City, Oklahoma, for Plaintiff-Appellant and Cross-Appellee.

Patrick E. Carr (Sidney A. Martin II of Carr & Carr Attorneys, Tulsa, Oklahoma, and Tye H. Smith, Oklahoma City, Oklahoma, with him on the briefs) of Carr & Carr Attorneys, Tulsa, Oklahoma, for Defendants-Appellees.

Larry Derryberry, Robert N. Naifeh, Jr., and Gladys E. Cherry, of Derryberry, Quigley, Parrish, Solomon & Blankenship, Oklahoma City, Oklahoma, Amicus Curiae for American Insurance Association.

———————————————

Before **BALDOCK, BRORBY** AND **KELLY**, Circuit Judges.

**BRORBY**, Circuit Judge.

———————————

This case asks us to delineate the coverage limits of a homeowner's insurance policy issued by Farmers Alliance Mutual Insurance Company ("Farmers Alliance") to Ofelia Salazar ("Ms. Salazar"). The dispute arose out of an incident in which Ms. Salazar's son, Manuel Jesus Corrales, participated in the murder of a boy named Thomas Byus. Farmers Alliance brought suit seeking a declaratory judgment that it has no duty to defend or indemnify Ms. Salazar or her son under the policy it issued to her. Loretta Byus, as administratrix of Thomas Byus's estate, intervened in the action.[1] The federal district court entered a default judgment against Ms. Salazar and her son, leaving Farmers Alliance and Ms. Byus as the only parties in the dispute. After the district court denied Farmers Alliance's motion for summary judgment, the parties submitted the case for trial on stipulated facts. The district court entered judgment for Farmers Alliance on its claim of no coverage for the acts of Manuel Corrales but found against the insurance company with regard to the acts of Ms. Salazar. Both Farmers Alliance and Ms. Byus filed timely notices of appeal. We exercise jurisdiction under 28 U.S.C. § 1291 and rule in favor of Farmers Alliance on both appeals.

## I. Facts & District Court Decision

Farmers Alliance and Ms. Byus have stipulated to the facts of this dispute.

Ms. Salazar owned a home in Oklahoma City, Oklahoma. Farmers Alliance sold Ms. Salazar

———————————

[1] Ms. Byus has filed a wrongful death action in Oklahoma State District Court against Ms. Salazar and Manuel Corrales.

2

and Margarito Salazar a homeowner's insurance policy for the one-year period beginning August 31, 1990, and ending August 31, 1991. Ms. Salazar's son, Manuel Corrales, was sixteen years old in 1991 and lived with Ms. Salazar in her home.

Manuel Corrales belonged to a youth street gang known for carrying guns and as early as the summer of 1990 owned a revolver, though it is not clear from whom or where he got it. Manuel kept the revolver in his mother's home and sometimes fired the gun at cans in Ms. Salazar's back yard. Ms. Salazar knew her son had the revolver, knew he often carried it on his person, and knew he had a tendency to threaten people with the gun. A friend of Manuel Corrales testified in a deposition that Ms. Salazar never tried to take the revolver away from Manuel and generally made no effort to exercise control over his use of the gun.

Two days before Thomas Byus's murder, Ms. Salazar gave her other son, Hector, a silver-colored automatic pistol. In Ms. Salazar's presence, Manuel said to his younger brother, "Give it to me," and took the automatic from Hector. This transaction took place in Ms. Salazar's home. The next day, having taken his brother's new automatic pistol, Manuel Corrales gave his revolver to his friend Jacob De LaCruz while the two boys were standing in front of Ms. Salazar's home. At this time, neither Manuel nor Jacob had any intention of murdering Thomas Byus.

On the evening of August 4, 1991, Manuel Corrales and Jacob De LaCruz went out with some friends in a car. Jacob had the revolver Manuel had given him, and Manuel had the automatic he had taken from his brother. Another youth was driving the car. After the group left an

establishment where they had gone to play pool, Manuel Corrales instigated a dispute with some youths in another vehicle by giving a gang signal with his hand. The ensuing argument escalated until Thomas Byus, the driver of the other vehicle, suggested the occupants of the two vehicles resolve the dispute by getting out of their cars and fighting. Manuel Corrales and Jacob De LaCruz chose instead to use their guns. Each boy fired at least one shot from their vehicle into Thomas Byus's vehicle. A bullet from the revolver fired by Jacob De LaCruz struck Thomas Byus in the head and killed him. A bullet fired by Manuel Corrales narrowly missed one of Byus's companions.

Upon his plea of guilty, Manuel Corrales was convicted of first degree murder and sentenced to life in prison without the possibility of parole. Jacob De LaCruz, after trial by jury, was convicted of first degree murder and sentenced to life in prison without the possibility of parole.

Farmers Alliance and Ms. Byus have stipulated for the purposes of this case that Ms. Salazar was negligent in her supervision of Manuel Corrales in permitting him to possess the revolver and the silver-colored automatic pistol. The parties also have stipulated that Manuel Corrales was negligent in giving the revolver to Jacob De LaCruz.

The policy Ms. Salazar purchased from Farmers Alliance provided in relevant part:

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
        A. bodily injury or
        B. property damage
to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto, and the company shall have the right and duty to defend any suit

4

against the Insured seeking damages on account of such bodily injury or property damage ....

According to the policy's definitions section, "Occurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The parties agree that Ms. Salazar and Manuel Corrales were "insureds" under the policy.

The district court found Farmers Alliance had no obligation to indemnify or defend Manuel Corrales with respect to liability he might incur for his participation in Thomas Byus's murder. Finding Manuel both intended and expected Thomas Byus's bodily injury, the district court concluded there was no "occurrence" as the term is defined by the policy. The court then reasoned that because, in its view, "occurrence" is defined from the "standpoint of the insured," Thomas Byus's murder was an "occurrence" with respect to Ms. Corrales because she neither intended nor expected the shooting. The district court concluded Farmers Alliance was obligated to defend and indemnify Ms. Corrales because her negligent supervision of Manuel, which lead to Thomas Byus's death, occurred at her home. Therefore, Byus's injury arose "out of the ownership, maintenance or use of the insured premises."

## II. Standard of Review

The district court's jurisdiction over this matter was based on diversity of citizenship. 28 U.S.C. § 1332. A federal court sitting in diversity applies the substantive law of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). We review de novo the district court's

determinations of state law. *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991); *Magnum Foods, Inc. v. Continental Casualty Co.*, 36 F.3d 1491, 1497 (10th Cir. 1994). Because Oklahoma is the forum state in this dispute, we will apply the most recent statements of Oklahoma law by the Oklahoma Supreme Court. *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 513 (10th Cir. 1994). If "no state cases exist on a point, we turn to other 'state court decisions, federal decisions, and the general weight and trend of authority.'" *Barnard v. Fireman's Fund Ins. Co.*, 996 F.2d 246, 248 (10th Cir. 1993) (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988)).

## III. Discussion

Farmers Alliance's duty to defend and indemnify Ms. Salazar and Manuel Corrales turns on whether Thomas Byus's death was a "bodily injury ... caused by an occurrence and arising out of the ownership, maintenance or use of" Ms. Salazar's home. Obviously, the parties do not dispute that Thomas Byus sustained a bodily injury; therefore, we are left to ask whether his death was caused by an occurrence and whether it also arose out of the ownership, maintenance or use of Ms. Salazar's home. We begin our analysis by addressing whether an "occurrence," as this term is defined by the policy, caused Thomas Byus's death.

Before we apply the policy's definition of "occurrence," we must first decide what event or events in the causal chain leading to Thomas Byus's death should be the focus of our inquiry. In other words, we cannot determine whether some act or omission was an "occurrence" until we know which act or omission we are supposed to be looking at. Farmers Alliance and Ms. Byus disagree on this issue. Farmers Alliance contends Jacob De LaCruz's firing of a bullet into Thomas Byus's

head was the event that must qualify as an "occurrence" under the policy. Ms. Byus asks us to cast our focus further up the causal chain to Ms. Salazar's negligent supervision of Manuel and Manuel's negligent entrustment of the murder weapon to Jacob De LaCruz.

Neither the parties' briefs nor our research reveals a decision by the Oklahoma courts on the issue of where the "occurrence" inquiry should focus. Accordingly, we turn to other state court decisions, federal decisions, and the general trend and weight of authority in an effort to predict how the Oklahoma Supreme Court would decide the issue. *Barnard*, 996 F.2d at 248. At the outset, we note the facts of this case appear relatively unusual. Our search for "occurrence" policy case law addressing a causal chain that begins with a negligent act or omission and ends with an intentional tort has uncovered the decisional equivalent of a famine. We have located no cases addressing the issue facing us today.[2] Therefore, we begin our analysis with cases that might help by analogy or deduction. Of the scores of decisions interpreting "occurrence" policies, two categories of cases

---

[2] Our research has turned up a case with facts analogous to those presented in this case; however, the court in that case avoided the issue confronting us today. In *American Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease, Inc.*, 756 F. Supp. 1287 (N.D. Cal. 1991), an insurer brought a declaratory judgment action seeking a declaration that a cab company's liability policy did not require the insurer to defend the cab company in a suit brought by the parents of a boy who was sexually molested by one of the cab company's drivers. The boy's parents claimed the cab company's negligent hiring and supervision of the driver made the company liable for the driver's intentional tort. In *American Empire*, rather than address which aspect of the causal chain should be the focus of the "occurrence" inquiry, the district court merely accepted *arguendo* the insured's claim that its negligent hiring was the "occurrence" that gave rise to the boy's injuries. The court found for the insurer on the ground that negligent hiring is not "an accident" and therefore could not qualify as "an occurrence." *Id.* at 1290. It is not clear whether the insurer in *American Empire* argued, as Farmers Alliance does in this case, that the "occurrence" inquiry should focus on the immediate circumstances of the injury rather than the antecedent acts or omissions of the insured. Though we could analyze this case pursuant to the approach in *American Empire* and accordingly ask whether negligent supervision and entrustment are accidents, we prefer to resolve this case, if possible, on the grounds explicitly argued by the parties.

prove particularly instructive. The first category answers the question of when an "occurrence" happens, and the second focuses on where.

The time of an "occurrence" most often becomes important in cases where the initial wrongdoing in a causal chain fell within the policy period but the resulting injury occurred after the expiration of the policy. For example, in *Friendship Homes, Inc. v. American States Ins. Cos.*, 450 N.W.2d 778 (N.D. 1990), a contractor's employee negligently installed a fireplace during the policy period but the resulting fire that damaged the customer's building did not breakout until after the policy expired. When was the "occurrence": at the time of the negligent installation or the resulting fire? As the court in *Friendship Homes* observed, it is "well-settled . . . that the time of an occurrence of an accident, within the meaning of a liability indemnity policy, is not the time when the wrongful act was committed, but the time when the complaining party was actually damaged." *Friendship Homes*, 450 N.W.2d at 780 (citing cases); *see also City of Jasper v. Employers Ins. of Wausau*, 987 F.2d 453, 455 (7th Cir. 1993); *Trizec Properties v. Biltmore Constr. Co.*, 767 F.2d 810, 812 (11th Cir. 1985); *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 62 (3d Cir. 1982); *Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, Ltd.*, 875 P.2d 894, 905 (Haw. 1994); *Hartford Accident & Indem. Co. v. Aetna Life & Casualty Ins. Co.*, 483 A.2d 402 (N.J. 1984); *Singsaas v. Diederich*, 238 N.W.2d 878, 880 (Minn. 1976); *Maples v. Aetna Casualty & Surety Co.*, 148 Cal.Rptr. 80, 81-84 (Cal. Ct. App. 1978); 11 Couch on Insurance 2d § 44:8; 1 Rowland H. Long, The Law of Liability Insurance § 1.08[1], at 57 & n.18; Richard C. Tenney, Annot., Events as Occurring Within Period of Coverage of "Occurrence" and "Discovery" or "Claims Made" Liability Policies, 37 A.L.R.4th 382, 395-400 (1985). In 1982, the Idaho Supreme Court determined this rule has been

followed in every jurisdiction to consider the question except Louisiana. *Millers Mut. Fire Ins. Co. v. Bailey*, 647 P.2d 1249, 1251 (Idaho 1982). Furthermore, the Oklahoma Court of Appeals has recognized without disapproval that the time of an "occurrence" generally is determined by "'the time the complaining party was actually damaged.'" *Harbour v. Mid-Continent Casualty Co.*, 752 P.2d 258, 261 n.3 (Okla. Ct. App. 1987) (quoting *United States Fidelity & Guar. Co. v. Warwick Dev. Co.*, 446 So.2d 1021, 1024 (Ala. 1984)). We have no reason to believe the Oklahoma Supreme Court would view the issue differently.

We now turn to the second category of instructive cases, those addressing the place of an "occurrence." The issue of where an "occurrence" happens often arises when an injury is sustained outside the United States because of some act or omission in the United States and the disputed policy limits coverage to the United States. The issue also arises when a policy limits coverage to on-site occurrences. The accepted general rule in both situations parallels the general rule in cases where the time of an "occurrence" is the issue. The location of an "occurrence" is determined by the place where the injury happened; it does not matter that a precipitating event took place elsewhere. *See, e.g.*, *Dowden v. Security Ins. Co.,* 378 F.2d 46, 48 (5th Cir. 1967); *Hagen Supply Corp. v. Iowa Nat'l Mut. Ins. Co.*, 331 F.2d 199, 202 (8th Cir. 1964); *Upper Columbia River Towing Co. v. Maryland Casualty Co.*, 313 F.2d 702, 705 (9th Cir. 1963); *Service Welding & Mach. Co. v. Michigan Mut. Liab. Co.*, 311 F.2d 612, 618 (6th Cir. 1962); *Keystone Automated Equip. Co. v. Reliance Ins. Co.*, 535 A.2d 648, 655 (Pa. Super. Ct. 1988); *Foremost Ins. Co. v. Eanes*, 184 Cal. Rptr. 635, 637-38 (Cal.Ct. App. 1982); *see also Diamond Shamrock Chemicals Co. v. Aetna Casualty & Sur. Co.*, 609 A.2d 440, 471-72 (N.J. Super. Ct. App. Div. 1992) (surveying the above-

9

cited cases and concluding, for purposes of a war risk exclusion, "the 'occurrence' which triggers the policy coverage takes place where the actual damage happens"), *certification denied*, 634 A.2d 528 (N.J. 1993). In our view, the Oklahoma Supreme Court would follow this generally accepted rule.

Though the cases establishing the time and place of an "occurrence" as the time and place of the claimed injury do not address our issue directly, we find them dispositive. We find that when determining whether a bodily injury was "caused by an occurrence" the question of whether there was an "occurrence" should be resolved by focusing on the injury and its immediately attendant causative circumstances. We reach this conclusion by means of simple deduction. If the time and place of an "occurrence" are determined by the time and place of the injury, then the acts which are said to constitute the "occurrence" must necessarily fall within the same temporal and spatial parameters. Looking at the facts of this case, we know that as a matter of firmly established law the supposed "occurrence" at issue in this case happened when and where Jacob De LaCruz murdered Thomas Byus. If we want to know which acts or omissions constituted this supposed "occurrence" we must focus our attention to the same time and place -- to the murder itself. Though myriad other events of an earlier time and different place may have contributed to the claimed injury, to determine whether there was an "occurrence" within the meaning of the policy we must focus on those events directly responsible for the injury. *See Maples*, 148 Cal. Rptr. at 84 (holding that "the event causing damage, not the earlier event creating the potential for future injury" is the triggering event for a liability policy).

To qualify as an "occurrence" under the policy an incident must be "an accident, including

10

continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Because there is no claim Thomas Byus's death resulted from "continuous or repeated exposure to conditions," we are left to ask whether his murder was "an accident . . . which resulted in bodily injury neither expected nor intended from the standpoint of the insured." The plain language of this definition indicates a two-part requirement. First, the incident at issue must have been "an accident." Second, the resulting injury must have been "neither expected nor intended from the standpoint of the insured." *See Fidelity & Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co.*, 25 F.3d 484, 487 (7th Cir. 1994) ("The first term that requires analysis is 'accident,' because in order to be an 'occurrence' the action must be an 'accident.'" (Quotation marks and citation omitted.)).

We need not reach the issue of whether Ms. Salazar or Manuel Corrales actually intended or expected Thomas Byus's death, because intentional murder is not "an accident." According to the Oklahoma Supreme Court, "the words, 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally." *United States Fidelity & Guar. Co. v. Briscoe*, 239 P.2d 754, 756 (Okla. 1951) (per curiam). Thus, an accident "is an event from an unknown cause, or an unexpected event from a known cause. An unusual event and unexpected result, attending the performance of a usual or necessary act." *Id.* at 757 (citations omitted). Jacob De LaCruz's intentional murder of Thomas Byus does not fit this description; therefore, it was not an accident, *see Penley v. Gulf Ins. Co.*, 414 P.2d 305, 308 (Okla. 1966) ("an intentional or willful tort would negative the existence of an accident" (quotation marks and citation

11

omitted)), and does not qualify as an "occurrence" under the Policy.

Farmers Alliance's duty to defend and indemnify Ms. Salazar and Manuel Corrales only applies to liability on account of "bodily injury . . . caused by an occurrence." Since the murder of Thomas Byus was not "an occurrence," it did not trigger coverage. Because we find there was not "an occurrence," we need not address whether Thomas Byus's murder arose "out of the ownership, maintenance or use of the insured premises." Even if the murder did arise out of the use of Ms. Salazar's home, coverage would still not be available to her or Manuel Corrales.

The judgment of the district court is **AFFIRMED** with respect to Farmers Alliance's duty to defend and indemnify Manuel Corrales and **REVERSED** with respect to Farmers Alliance's duty to defend and indemnify Ofelia Salazar.