**PUBLISH**

# UNITED STATES COURT OF APPEALS
## Filed 8/1/96TENTH CIRCUIT

---

CONOCO INCORPORATED,

     Third-Party Plaintiff,

and

CONOCO PIPELINE CO.,

     Third-Party Plaintiff-Appellant/
Cross-Appellee,

v.

ONEOK, INC., doing business as
Oklahoma Natural Gas Company,

     Third-Party Defendant-
Appellee/Cross-Appellant.

_____

ASSOCIATION OF OIL PIPE LINES,

     Amicus Curiae.

Nos. 95-6095
95-6118

---

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-93-1060-L)

---

Gary W. Davis, of Crowe & Dunlevy, Oklahoma City, Oklahoma (L. Mark Walker
and Fred R. Gipson of Crowe & Dunlevy, Oklahoma City, Oklahoma; and Mark

R. Zehleer, Conoco Inc., Houston, Texas, with him on the briefs), for Third- Party Plaintiff-Appellant/Cross-Appellee.

Peter L. Wheeler (D. Lynn Babb and Susan A. Doke, with him on the briefs) of Pierce Couch Hendrickson Baysinger & Green, Oklahoma City, Oklahoma, for Third-Party Defendant-Appellee/Cross-Appellant.

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **TACHA**, Circuit Judges.

**SEYMOUR**, Chief Judge.

Mr. Don E. Moore and Ms. Connie J. Moore brought this action alleging their property was polluted by Conoco, Inc. and Conoco Pipe Line Co.[1] The Moores alleged that Conoco owned and operated a pipeline which broke and spilled gasoline and fuel oil into nearby soil and ground water. Conoco brought a third-party action against ONEOK, Inc., d/b/a Oklahoma Natural Gas Company (ONG), alleging that the leak was caused by the installation of an ONG pipeline on top of the Conoco pipeline, and seeking damages for the Moore claim and for state-ordered remediation costs. Conoco settled with the Moores, leaving only the dispute between Conoco and ONG to be decided by the jury. The jury returned a verdict in favor of Conoco with regard to the Moore settlement, establishing the proportion of ONG's liability at fifty percent, and in favor of ONG on Conoco's unjust enrichment claim for the remediation costs. Both parties appeal. We affirm in part and reverse in part.

I.

In 1962, Conoco completed the installation of a pipeline which runs north and south through Del City, Oklahoma, and started utilizing the pipeline to carry gasoline and fuel oil. In 1964, ONG hired P&A Construction Co. to install a

---

[1] After discovery, the Moores dropped their claims against Conoco, Inc. and proceeded solely against Conoco Pipe Line Co.

pipeline running east and west through Del City, which ONG then used to carry natural gas. In 1976, Conoco's pipeline ruptured, releasing gasoline and fuel oil in the nearby area. The ONG pipeline was resting on top of the Conoco pipeline and had caused a dent at the location of the rupture. Conoco conducted a cleanup of the leak site and repaired the pipeline without seeking reimbursement from ONG.

Mr. Richard Keen, whose property was in the vicinity of the 1976 leak, discovered gasoline in his underground water well in 1991. The State of Oklahoma investigated and concluded that the source of the gasoline was the 1976 leak. The State ordered Conoco to remediate the leak.[2] The State approved Conoco's cleanup plan and remediation has been ongoing since 1991.

The Moores, whose property is adjacent to the Keen property, filed this action in 1993 alleging that the 1976 leak also polluted their soil and underground water. After Conoco settled with the Moores, ONG stipulated that the settlement and the state-ordered cleanup costs were reasonable. At the close of Conoco's evidence, and again prior to the jury instruction conference, ONG moved for a directed verdict determining as a matter of law that P&A was an independent contractor for whose negligent acts ONG would not be liable. The district court declined to direct a verdict, holding that fact issues existed regarding P&A's

---

[2] State waters and other properties were polluted as a result of the leak.

independence.

During the jury instruction conference, Conoco requested that the jury be instructed it could find ONG liable to Conoco under both a contribution and an unjust enrichment theory with respect to the cleanup costs and the Moore settlement costs. The district court determined instead that the cleanup claim would be submitted solely under an unjust enrichment theory and the Moore claim would be submitted solely under a contribution theory. The jury found that Conoco and ONG were each negligent on an equal basis, and that Conoco was entitled to contribution for fifty percent of the amount it paid in settlement to the Moores. The jury found in favor of ONG on Conoco's unjust enrichment claim for the state remediation costs.

On appeal, ONG contends the district court erred in denying its motion for directed verdict on P&A's status as an independent contractor. Conoco contends the district court erred in denying its request to submit the state-ordered remediation costs to the jury under a theory of contribution, and asserts we should order contribution as a matter of law in accordance with the jury's determination that each party was fifty percent responsible for the pipeline leak.

II.

We first address ONG's claim that it was entitled to a directed verdict on

P&A's status as an independent contractor, which if successful would entitle ONG to judgment as a matter of law. In a diversity case, we apply the federal standard and review de novo the district court's denial of a motion for directed verdict. J.I. Case Credit Corp. v. Crites, 851 F.2d 309, 311 (10th Cir. 1988). A directed verdict is appropriate "'only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion.'" Id. (quoting McKinney v. Gannett Co., Inc., 817 F.2d 659, 663 (10th Cir. 1987)). If "the evidence is sufficient to create an issue for the jury," a motion for directed verdict is inappropriate. Id.

> Under Oklahoma law, independent contractor status depends upon
>
> whether the alleged employer had the right to control, or purported or attempted to control, the manner of doing the job by the alleged servant . . . . If he did have that right or exercised it regardless of his right to exercise it, then the relationship is that of master and servant. . . . [W]here the facts bearing on such issue are either disputed or conflicting inferences may be reasonably drawn from the known facts, it would be error to withhold the issue from the determination of the jury.

Holland v. Dolese Co., 643 P.2d 317, 319-20 (Okla. 1982). Moreover, "although under a written contract the question whether the relation of employer and independent contractor ordinarily is a question of law for the court, a contract which purports to create such relationship will not protect the employer when it may be inferred from facts and circumstances revealed by evidence that, despite provisions of contract, the real relation was that of master and servant."

-6-

McReynolds v. Oklahoma Turnpike Auth., 291 P.2d 341, 345 (Okla. 1955); see

Mistletoe Express Service v. Culp, 353 P.2d 9, 12 (1959) (listing elements to be

considered in determining whether relationship was that of servant or independent

contractor).

In the present case, conflicting inferences regarding ONG's relationship

with P&A may reasonably be drawn from their contract. The memorandum

contract stated that P&A was an independent contractor and that ONG reserved no

right to control the manner and method of performance. In addition, the general

specifications incorporated into the contract stated that P&A was solely

responsible for determining the depth of other pipelines. On the other hand, the

proposal, which was also incorporated into the contract, stated that while

pipelines were required to be at least forty-eight inches below ground level,

greater depths to pass under existing pipelines could be required by ONG[3] and

would be considered part of the pipeline installation. The general specifications

also stated that ONG reserved the right to make changes in location of the

pipelines if necessitated by right-of-way difficulties or unforseen obstructions,

and that P&A could not make any changes in the location without the approval of

ONG. The general specifications further stated, among other things, that where

_____

[3] Two ONG employees were involved in the pipeline installation, a chief
inspector and a welding inspector.

ONG deemed it necessary, excavations were required around valves and other protruding fittings; that the method of crossing rivers, creeks, and drainage channels was to be determined by ONG; and that additional expenses incurred in the lowering of the pipe as a result of direction from ONG would be paid by ONG.[4] Based on the foregoing, the terms of the contract are susceptible to the inference that ONG had the right to control the manner or method of installation, notwithstanding its characterization of P&A as an independent contractor.

Conflicting inferences may also be drawn from testimony at trial. Mr. Jimmy Luster, a retired ONG welding inspector, testified that he was present during the installation of the pipeline and that he did not direct the employees of P&A, nor instruct them on the method of installation. Mr. Luster also testified, however, that ONG had authority under the contract to ensure that the pipeline was installed in the way ONG would have installed it. Mr. J.T. Hyatt, also a retired ONG inspector, testified that ONG inspectors did not in general have direct responsibility over individual contractors or employees. Mr. Hyatt also testified, however, that under the contract in this case ONG controlled the depths at which new pipeline should pass under existing pipeline and also directed pipeline lowering.

---

[4]The contract contains numerous other examples of ONG's control over the details of the pipeline installation. For example, the thinning of primer was prohibited except under the direct supervision of ONG. Aplee. App. at 33.

Ample evidence existed from which a jury could reasonably infer that P&A was not an independent contractor. Both the contract and testimony at trial support the inference that ONG had the right to control, or purported or attempted to control, the manner or method of installing the pipeline. Consequently, the district court did not err in denying ONG's motion for a directed verdict on this issue.[5]

### III.

We now address whether the jury should have been instructed under a contribution theory on Conoco's claim for state-ordered remediation costs. In a diversity case, we apply the substantive law of the forum state and review the district court's determinations of state law de novo. Farmers Alliance Mut. Ins. Co. v. Salazar, 77 F.3d 1291, 1294 (10th Cir. 1996). Under Oklahoma statutory law, "[w]hen two or more persons become jointly or severally liable in tort for the same injury to person or property . . . there is a right of contribution among them even though judgment has not been recovered against all or any of them . . . ." Okla. Stat. tit. 12, § 832 (A) (1988).[6]

---

[5] To the extent that ONG contends the evidence was insufficient to support the jury's verdict, we disagree.

[6] "The right of contribution exists only in favor of a tort-feasor who has paid more than their pro rata share . . . ." Okla. Stat. tit. 12, § 832 (B).

Conoco committed a tort and the State of Oklahoma suffered an injury when the gasoline and fuel oil from the 1976 leak polluted state waters. See Okla. Stat. tit. 27A, § 2-6-105 (1996) ("It shall be unlawful for any person to cause pollution of any waters of the state . . . . Any such action is hereby declared to be a public nuisance."). The parties stipulated that the State ordered Conoco to remediate the 1976 leak site. ONG contends, however, that the expenses incurred by Conoco to remediate the leak were Conoco's own damages and therefore form the basis of an independent claim rather than a contribution claim. We disagree. The costs Conoco incurred in complying with the State's order were the direct result of a tort committed against state waters, and Conoco presented evidence at trial that ONG was jointly or severally liable for the leak that caused the pollution. We therefore hold that the jury should have been instructed under a contribution theory on the state-ordered remediation costs.

The question remains whether the jury verdict and stipulations support an order of contribution as a matter of law. The jury found that ONG and Conoco were joint tortfeasors in polluting the Moores' property and found them each fifty percent liable. The only evidence before the jury establishing causation was the

---

A tortfeasor may seek contribution for payment of a joint liability where the payment is cash, its equivalent, or anything else accepted in satisfaction for injury to person or property. See Power v. Sullivan, 852 P.2d 790, 792 (Okla. Ct. App. 1993).

1976 leak. ONG and Conoco stipulated that the proportion of liability established by the jury would apply to liability incurred for the cleanup. Aplt. App. at 316-17. ONG and Conoco further stipulated that the current costs of the cleanup were reasonable and that the future costs of the cleanup would be subject to the proportion of liability established by the jury. Id. at 317. There is thus no fact issue left for trial. Accordingly, we hold that ONG is fifty percent liable for the past and future costs incurred in the 1976 leak cleanup.

We AFFIRM the denial of ONG's motion for directed verdict. We REVERSE the district court's refusal to send Conoco's contribution claim against ONG to the jury, and we hold that on this record Conoco is entitled to contribution with respect to stipulated current and future cleanup costs in accordance with the percentages of fault established by the jury. We REMAND the case to the district court to enter judgment in favor of Conoco consistent with this opinion.