**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 17, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STATE FARM FIRE & CASUALTY
COMPANY,

     Plaintiff - Appellee,

v.

VICTORIA WILLIAMS, as personal
representative of the estate of Khalid
Jabara,

     Defendant - Appellant,

and

DAVID SCOTT, as administrator of the
estate of Stephen A. Schmauss; STANLEY
VERNON MAJORS,

     Defendants.

No. 18-5080
(D.C. No. 4:17-CV-00656-CVE-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McKAY**, and **HOLMES**, Circuit Judges.
_____

     This is a declaratory judgment action filed by State Farm Fire & Casualty

Company to secure a ruling that it was not obligated to defend or indemnify its

insureds in a state tort case Victoria Williams filed against them.

_____

     [*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The district court granted summary judgment in favor of State Farm, and Ms. Williams appealed. We review de novo an order granting summary judgment, viewing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in her favor. *DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017).

In August 2016, Stanley Majors shot and killed his neighbor Khalid Jabara. Mr. Majors was convicted of first-degree murder for the killing of Mr. Jabara. The gun Mr. Majors used in the crime was purchased and owned by Stephen Schmauss, Mr. Major's husband.

In February 2017, Mr. Jabara's sister, Ms. Williams, filed suit against Mr. Majors and Mr. Schmauss in Oklahoma state court, placing Mr. Schmauss's liability for Mr. Jabara's death in his ownership of the gun and accompanying negligence or recklessness. Because Mr. Schmauss and Mr. Majors had insurance policies with State Farm at the time of the murder, the insurance company filed a complaint in federal court seeking a declaration that the policies did not cover Ms. Williams's claims.

The homeowners' insurance policy Mr. Schmauss and Mr. Majors held together provided that State Farm would defend and indemnify the insured "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence." (Appellant's App. at 157.) The policy defined "occurrence" as "an accident, including exposure to conditions, which results in . . . bodily injury[] or . . . property

2

damage . . . during the policy period." (*Id.* at 143–44.) It excluded coverage for "bodily injury or property damage . . . (1) which is either expected or intended by the insured[,] or (2) which is the result of willful and malicious acts of the insured." (*Id.* at 158.) The policy also included a "Severability of Insurance" provision stating, "This insurance applies separately to each insured." (*Id.* at 161.)

Mr. Schmauss individually held an additional personal liability umbrella policy issued by State Farm. That policy provided that State Farm would defend and indemnify the insured "[i]f a claim is made or suit is brought against an insured for damages because of a loss to which this policy applies." (*Id.* at 187.) The policy defined "loss" as "an accident, including accidental exposure to conditions, which first results in bodily injury or property damage during the policy period." (*Id.* at 183.) Like the homeowners' policy, the umbrella policy excluded coverage for "bodily injury or property damage which is . . . either expected or intended by the insured[,] or . . . the result of any willful and malicious act of the insured." (*Id.* at 190.) Neither policy defined the term "accident."

In January 2018, State Farm brought this action for declaratory judgment and soon thereafter filed a motion for summary judgment, arguing that intentional murder was not an "accident" and therefore was not covered by the policies. In support of this argument, State Farm cited to *Farmers Alliance Mutual Insurance Co. v. Salazar*, 77 F.3d 1291, 1294, 1297 (10th Cir. 1996), a diversity case arising out of Oklahoma in which a panel of this court concluded that "intentional murder is not 'an accident.'" Ms. Williams filed a motion requesting that the district court certify a

question of law to the Oklahoma Supreme Court, asking in essence whether *Salazar*'s holding is an accurate statement of Oklahoma law or whether the perspective of the insured—and each insured when a policy is held by multiple persons—is relevant to determining the accidental nature of an event. Ms. Williams's response to State Farm's motion for summary judgment also attempted to show that the reasoning in *Salazar* was flawed, as well as to distinguish that case under the facts and policy language at issue here. The following month, Ms. Williams filed her own motion for summary judgment, which made several of the same arguments she had made in response to State Farm's motion.

In its order ruling on the motions, the district court concluded that it would be inappropriate for it to certify Ms. Williams's question to the Oklahoma Supreme Court because it was bound by *Salazar*. It then concluded that *Salazar*'s holding that murder can never qualify as an accident under an Oklahoma insurance policy dictated summary judgment in State Farm's favor. Ms. Williams appealed and filed a motion asking this court to certify her question to the Oklahoma Supreme Court.

Ms. Williams's argument on appeal, in addition to her motion to certify a question of state law, revolves around the *Salazar* decision. In that case, Ms. Salazar's sixteen-year-old son Manuel Corrales and his friend Jacob De LaCruz murdered another boy, Thomas Byus, by shooting him from a moving vehicle. *Salazar*, 77 F.3d at 1293–94. The administratrix of the boy's estate, Ms. Byus, filed a wrongful death action in Oklahoma state court against Ms. Salazar and her son. *Id.* at 1293 & n.1. The claim against Ms. Salazar asserted that she had negligently

4

supervised her son by allowing him to possess the gun he used in the shooting, as well as the gun he gave to Jacob De LaCruz also to use in the shooting. *Id.* at 1293–94.

Ms. Salazar had a homeowner's insurance policy providing that Farmers Alliance would defend and indemnify the insured for damages because of bodily injury or property damage "to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto." *Id.* The policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 1294. The district court concluded that the murder was not an "occurrence" as to Manuel Corrales because he intended and expected to harm Thomas Byus. *Id.* As to Ms. Salazar, however, the district court concluded that the murder was an "occurrence" because she did not expect or intend the harm, and it arose out of her ownership and use of the house because that is where her negligent supervision took place. *Id.*

On appeal, a panel of this court first held that "when determining whether a bodily injury was 'caused by an occurrence' the question of whether there was an 'occurrence' should be resolved by focusing on the injury and its immediately attendant causative circumstances." *Id.* at 1296. Thus, the potential "occurrence" at issue in that case was the murder itself, as opposed to any negligent actions leading up to it. *Id.* at 1297. From there, the *Salazar* panel considered whether the murder

was an "occurrence" under the policy's definition of that term, concluding that the definition "indicate[d] a two-part requirement": (1) "the incident at issue must have been 'an accident,'" and (2) "the resulting injury must have been 'neither expected nor intended from the standpoint of the insured.'" *Id.* Because the panel concluded that "intentional murder is not 'an accident,'" *Salazar* did not address the "expected or intended" portion of the definition, nor did it address whether the murder arose out of Ms. Salazar's ownership or use of the house. 77 F.3d at 1297.

State Farm acknowledges that, a year after *Salazar* was decided, in *Mayer v. State Farm Mutual Automobile Insurance Co.*, 944 P.2d 288, 290 (Okla. 1997), the Oklahoma Supreme Court observed, "In first-party uninsured motorist coverage contests between the insured and the insurer, the term 'accident' is viewed from the standpoint of the insured. It can include criminal acts arising from the uninsured vehicle's use." In our case, State Farm contends that "Oklahoma only views the term 'accident' from the standpoint of the insured in first party insurance cases, i.e., where the insured is the claimant." (Appellee's Br. at 11.)

This case does not give us occasion to revisit the decision in *Salazar*, which is binding precedent on us. *See Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) ("[W]hen a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue."). The Oklahoma Supreme Court's decision in *Mayer*, although issued after the decision in *Salazar*, did not in fact resolve the issue before

6

us in this case. As State Farm has pointed out, *Mayer* dealt with the definition of "accident" in the context of first-party uninsured motorist coverage and did not involve a third-party insurance claim like the one at issue here. Nor did *Mayer* cite to or discuss *Salazar*. *See Wankier*, 353 F.3d at 867.

Therefore, we must reject Ms. Williams's arguments that merely criticize *Salazar*'s reasoning. Ms. Williams does, however, make an effort to distinguish that case on the basis that the policy language at issue there differed from the language at issue in this case. Specifically, she observes that the *Salazar* definition of "occurrence" included "from the perspective of the insured," whereas the definition here lacks that information. (Appellant's Br. at 13.) According to Ms. Williams, this "key difference" renders the policy language here ambiguous, requiring an interpretation in favor of coverage. (*Id.*) Unfortunately for Ms. Williams, *Salazar*'s holding precludes this argument because the *Salazar* court did not rely on the second prong of the two-part test it identified, which would have considered the meaning of "neither expected nor intended from the standpoint of the insured." *See* 77 F.3d at 1297. Instead, *Salazar* broadly held that the term "accident" unambiguously precludes coverage for murder from any perspective. *See id.* We additionally note that it would be odd for us to conclude that a policy expressly distinguishing between perspectives unambiguously *did not* allow coverage for murder but that a policy without such a distinction could be read as allowing it.

*Salazar* also precludes each of Ms. Williams's other arguments for coverage in this case. First, she contends that the severability clause of the homeowners' policy

makes the murder an "occurrence" as to Mr. Schmauss even though it is not an "occurrence" as to Mr. Majors. Second, she argues that the severability clause interacts with the undefined term "accident" to create an ambiguity in the policy. *Salazar* did not address the existence of a severability clause in that case, but the fact that the district court there had found coverage for Ms. Salazar but not for her son suggests that the policy included one. *See id.* at 1294. Either way, however, *Salazar* concluded that murder could never be an "accident"—as in the definition of "occurrence"—even when only one insured committed the murder and it was allegedly unexpected from the perspective of the other insured. *See id.* at 1297. Nothing about our decision in *Salazar* suggests that a severability clause would affect this reasoning; under *Salazar*, a murder simply cannot be covered as an "accident" as to any insured.

Similarly, *Salazar* undermines Ms. Williams's contention that the terms "loss" and "occurrence" in the policies are ambiguous because they do not define "accident." The policy at issue in *Salazar* apparently did not define "accident" either, *see id.* at 1294, but again the *Salazar* court held that "accident" unambiguously does not include murder, *see id.* at 1297.

Finally, Ms. Williams asserts that the policies' exclusions for "bodily injury or property damage[]" that is "either expected or intended by the insured; or . . . the result of [any] willful and malicious act[] of the insured" (Appellant's App. at 158, 190), only exclude coverage for Mr. Majors, who acted intentionally, but not for Mr. Schmauss, who was merely negligent. As State Farm points out, however,

8

exclusions only come into play after coverage has been found under an insurance policy's coverage terms. Because *Salazar* held that there is no coverage for any murder, regardless of who committed it, the intentional-acts exclusions, like the intentional-acts limitation in the *Salazar* policy's definition of "occurrence," need not be reached. *See* 77 F.3d at 1297. At least as regards murder, the intentional-acts exclusions are a nullity.

We turn now to Ms. Williams's request that we ask the Oklahoma Supreme Court whether murder can constitute an "accident" in a third-party insurance case under Oklahoma law where the murder is unintended and unexpected from the perspective of the insured. "In diversity cases, the Erie doctrine instructs that federal courts must apply state substantive law" "in order to discourage forum shopping and to avoid inequitable administration of the [law]." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162, 1164 (10th Cir. 2017). Nevertheless, as noted above, each panel of this court is bound by stare decisis to follow the precedent of earlier decisions. *See Wankier*, 353 F.3d at 866. Additionally, "[t]he decision to certify 'rests in the sound discretion of the federal court.'" *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1120 (10th Cir. 2008) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). In our discretion, we decline to certify Ms. Williams's question to the Oklahoma Supreme Court.

9

The district court's order granting summary judgment in favor of State Farm is

**AFFIRMED**.  Ms. Williams's motion to certify a question of state law is **DENIED**.


        Entered for the Court


        Monroe G. McKay
        Circuit Judge