**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FLYING J INC., a Utah
corporation; TCH, LLC, a Utah
corporation; CFJ PROPERTIES, a
Utah partnership; TON SERVICES,
INC., a Utah corporation; and TFJ,
a Utah partnership,

   Plaintiffs-Appellants,

v.

COMDATA NETWORK, INC., a
Maryland Corporation,

   Defendant-Appellee.

No. 07-4279

(D. Utah)

(D.C. No. 1:96-CV-00066-BSJ)

**ORDER & JUDGMENT**[*]

Before **HENRY**, Chief Judge, **TACHA** and **MURPHY**, Circuit Judges.

Appellants, Flying J Inc. and its affiliated entities, TCH, CFJ

Properties, TON Services, and TFJ, which we will collectively refer to as

"Flying J," seek to enforce a settlement agreement with Comdata Network

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Inc. Both Flying J and Comdata provide trucking companies with fuel cards and maintain networks that process card transactions at various fuel merchants. After Flying J sued Comdata for antitrust violations, Comdata granted Flying J a license pursuant to a settlement agreement to use its fuel card processing system; Comdata construed the license as applying where merchants consented to the arrangement. Flying J disagreed with this construction and filed a motion to enforce the settlement agreement, essentially seeking access to the merchants who did not consent. Flying J initially proposed two models for processing card transactions that would accord with its view of the settlement agreement: the "primary model" and the "dual-processing model." Prior to the hearing on its motion, Flying J asked the district court not to consider the primary model. The district court ruled in Flying J's favor and ordered Comdata to implement the dual-processing model. We overturned this ruling. *See Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821 (10th Cir. 2005) ("*Flying J I*"). On remand, the district court declined Flying J's renewed request to put into place the primary model. Dismissing the suit and finding Comdata to be the prevailing party, the district court awarded Comdata attorney's fees in accordance with the settlement agreement.

Flying J now appeals this decision, arguing that the district court erred when it refused to implement the primary model and when it refused to

reduce Comdata's attorney's fees award. Because the license at issue and our precedent preclude implementation of the primary model, we hold that the district court's decision was correct. We also hold that its award of attorney's fees was well within its discretion. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the decision of the district court. Pursuant to the automatic stay provision of 11 U.S.C. § 362, judgment against Flying J Inc. (but not TCH, CFJ Properties, TON Services, and TFJ) is stayed pending further order of this court.

## I. BACKGROUND

Though we have previously stated the background for this case in great detail, we will restate an abbreviated version of the facts and include the procedural history relevant to this appeal. *See Flying J I*, 405 F.3d at 825-29.

A.    Factual Background

Flying J issues "TCH MasterCard" credit cards primarily to trucking companies who then give the cards to truck drivers to purchase fuel and other necessities. TCH MasterCards participate in the MasterCard network and may therefore be used as payment anywhere MasterCard is accepted. Unlike regular MasterCards though, the TCH MasterCards are meant to

function as so-called proprietary cards—allowing trucking companies to obtain instant information about the card's use and control what truckers purchase with the cards. However, the MasterCard network does not process the card's proprietary functions, requiring an additional card processing network. Comdata is a rival proprietary card issuer. Comdata operates the Trendar Network that can process both payments and proprietary functions. This appeal concerns processing of TCH MasterCards' proprietary functions over Comdata's Trendar Network.

Pursuant to a settlement agreement, Comdata granted TCH, Flying J Inc.'s affiliate, a license, the "Trendar License," to use Comdata's Trendar Network to process Flying J's TCH card transactions. *Id.* at 827 ("In short, the Trendar License provides TCH access to the Trendar System, and it enables TCH to effect data capture and purchase controls in transactions involving the TCH MasterCard."). Based on this license, Comdata configured the Trendar Network to process TCH MasterCards as proprietary cards, but only where merchants consented. Not surprisingly, "[m]any Flying J competitors, such as Pilot, Petro, and Travel Centers of America" choose not to accept the TCH MasterCard as a proprietary transaction. *Id.* Flying J believes that the Trendar License gives it access to these competitors, merchants that otherwise do not consent to accepting the proprietary functions of the TCH MasterCard.

B.    Procedural Background

Flying J filed a motion to enforce the settlement agreement to require Comdata to comply with its understanding of the Trendar License. Flying J initially submitted two models to bring Comdata into compliance with its view of the license. First, they argued for a "dual-processing model," in which the processing of the proprietary functions would occur on the Comdata network and the payment processing would occur on the MasterCard network. *See* Aplts' Br. at 8. They also sought to effectuate a "primary model," in which the processing of the proprietary function and payment occur completely on Comdata's network, separate from MasterCard's network. *See id.* at 7. Comdata processes its own cards using something similar to this primary model.

Before the district court decided the motion, Flying J abandoned the primary model because it failed to meet MasterCard requirements. The TCH MasterCard is part of the MasterCard network and therefore must conform to MasterCard regulations. MasterCard does not allow proprietary transactions without prior consent of merchants. *See Flying J I*, 405 at 828. On the first day of the bench trial on the original motion to enforce the settlement agreement, Flying J conceded that MasterCard had not consented to the primary model and therefore stated that the primary model claims were "moot." Aplt's App. vol. V, at 1413-14; (Hr'g on Motion to Enforce).

1.     The District Court Ruled in Flying J's Favor.

Flying J nonetheless won in the district court. Aplt's App. vol. I, at 230-62. The district court granted Flying J's motion to enforce the settlement agreement and ordered Comdata to implement the dual-processing method. Comdata appealed. Comdata, faced with implementing the district court's order while its appeal was pending, filed a motion to clarify with the district court. Comdata asked the court to clarify that Comdata need not disguise "TCH MasterCard transactions" as "Comdata transactions" for merchants. The district court clarified that it was not asking Comdata to label TCH MasterCard transactions as Comdata transactions. Aplt. App. vol. II, at 429.

2.     The Tenth Circuit Overturned the District Court.

Meanwhile, Comdata's appeal to the Tenth Circuit progressed. Ultimately, we disagreed with the district court order requiring implementation of the dual processing model. We held that the language in the license was ambiguous. Consequently, we examined the expectations of both parties and determined that both Flying J and Comdata intended TCH MasterCards to be processed similar to the way Comdata processes its own cards and that neither party contemplated dual processing of TCH card

transactions because the idea was not yet conceived. *Flying J I*, 405 F.3d at 839. Further, we held that Comdata had produced "substantial evidence indicating that it did not contemplate or intend that the Trendar License would lead to proprietary processing of TCH MasterCards at unaffiliated merchants, much less that this would be accomplished through a dual processing model." *Id.* at 835. Finding that the district court clearly erred, we reversed and remanded for proceedings consistent with our opinion. *Id.* at 839.

3.      Upon Remand, the District Court Found in Favor of Comdata.

Upon remand, Flying J filed a "Statement of Remaining Issues to be Decided in this Case on Remand." In it, Flying J asked the district court to determine that Comdata must treat TCH MasterCards like Comdata MasterCards and requested that the district court prescribe steps for Comdata to take to get approval from MasterCard for such a system.[2]

_____

[2]Specifically, Flying J claimed the following issues remained :

A. Does TCH have the following contract rights for processing of TCH MasterCard transactions using the Trendar System under the Trendar License (subject to obtaining MasterCard Approval)?

1. The TCH MasterCard will be treated like a Comdata MasterCard at truck stop merchants that use the Trendar System or its successors.

In asking the court for further consideration, Flying J sought to

> 2. Comdata will configure the Trendar System to treat TCH MasterCard transactions the same way that it treats Comdata MasterCard transactions.
>
> 3. In treating TCH MasterCards the same ways as it treats Comdata MasterCards, Comdata will construe TCH MasterCards as having the same rights, privileges, and responsibilities as a type of "CDN Card" (as that term is used in the form of Comchek Service Center Agreement marked as Exhibit 2 at the deposition Michael Sheridan gave on December 19, 2002 and in similar service center or merchant agreements). Thus, the TCH MasterCard will be treated as a type of CDN Card for purposes of all of Comdata's current and future service center or merchant agreements with travel plazas or truck stops that participate in the Comchek Network and use the Trendar System.
>
> 4. Comdata will route TCH MasterCard transactions directly through TCH in the manner depicted on the Exhibit labeled "TAB MasterCard transactions at Trendar Locations; Settlement Through Comdata," [attached to May 3, 2003 letter in Exhibit A] with authorization requests and confirmations and financial settlement running from the Trendar System through Comdata in the manner depicted in that diagram.
>
> 5. TCH MasterCard transactions will be processed through the Trendar System as single transactions just like Comdata MasterCard transactions.

B. What specific steps must Comdata take to help TCH obtain approval from MasterCard for the "primary model" based on its obligation under Article 4.2 of the Trendar License, which requires Comdata to use its "best reasonable efforts to obtain any consents required by third party network providers?"

Aplt's App. vol. IV, at 976 (Flying J's Statement of Remaining Issues).

effectuate the "primary model." However, this model required MasterCard's consent, which MasterCard still withheld where merchants did not consent. Flying J argued that it does not need individual merchants' consent and should be allowed to piggyback on the consent given to Comdata. The district court looked warily (and unfavorably) on this tactic, saying it was "somewhat reminiscent of the fabled Trojan horse." *See Flying J Inc. v. Comdata Network, Inc.*, No. 1:96-CV-066BSJ, 2007 WL 3550342, at *3 (D. Utah Nov. 15, 2007) ("*Flying J II*").

The district court held that the Tenth Circuit rejected this "Trojan horse model" when it decided that the settlement agreement did not require Comdata to use "any feasible means" to force merchants to accept TCH MasterCard proprietary transactions. *Id.* at *4 (citing *Flying J I*, 405 F.3d at 839). The district court similarly found that Flying J's request for the court to prescribe specific steps to help Flying J obtain third party consents was raised for the first time after remand. Therefore, this issue was "a matter for another day, and probably another lawsuit." *Id.* Thus, the district court held that the Tenth Circuit's decision in *Flying J* foreclosed further consideration of plaintiff's arguments.

4.   The District Court Awarded Attorney's Fees.

After concluding that Comdata was the prevailing party, the district

court awarded attorney's fees in accordance with the parties' prior settlement agreement. Comdata filed a detailed motion for attorney's fees with supporting declarations and exhibits. Flying J filed a Response challenging Comdata's attorney's fee claim as excessive. After holding an evidentiary hearing, the district court issued an order noting some concerns but nonetheless granting almost all Comdata's claimed attorney's fees.

5.    Flying J Now Appeals.

Flying J filed this appeal arguing first that the district court should have directed Comdata to comply with the primary model. Flying J argues that the district court misinterpreted both the district court's response to the motion to clarify–a different district judge presided on remand–and the Tenth Circuit opinion. Flying J asserts that it is still an open question whether Comdata should be forced to implement the primary model.

Second, Flying J argues that the district court's award of attorney's fees is excessive. Flying J argues that the award is unreasonable, especially based on what it considers "evidence of inefficiency and overlawyering based on the tasks undertaken and a comparison to [its own] total fees during the same time." Aplts' Br. at 3. Flying J also argues the fee should be reduced due to Comdata's attorneys' "extensive use of block billing." *Id*. According to Flying J, this court should hold as a matter of law that

extensive use of block billing requires a reduction in the fee.

## II. DISCUSSION

Reviewing the license at issue and our prior case law de novo, we hold that Flying J is not entitled to implementation of the primary model. Such an order would give Flying J access to merchants who do not consent to the proprietary functions of the TCH MasterCard, contravening both the license and the law of the case. Furthermore, Flying J's previous explicit abandonment of this argument at the district court level precludes its current consideration.

Regarding the attorney's fee award, we hold that there is no indication that the district court abused its discretion. We also decline to establish a rule of law requiring a reduction in fees where attorneys have "block billed."


A.   The District Court Did Not Err in Refusing to Implement the Primary Model.

The district court's conclusions about the scope of this Court's remand involve questions of law–interpreting previous rulings and the underlying settlement agreement and license–that are reviewable de novo. *See Scrivner v. Sonat Exploration Co.*, 242 F.3d 1288, 1291 (10th Cir. 2001); *In re Gledhill*, 76 F.3d 1070, 1079 (10th Cir. 1996).

Flying J is not currently entitled to access merchants who do not consent to process the proprietary functions of the TCH MasterCard. The portion of the license at issue states:

> All TCH Card Transactions processed through the Trendar System, including without limitation TCH Cards bearing a MasterCard or Visa brand, shall be cleared directly through TCH as opposed to any third party network, such as and without limitation the MasterCard network or Visa network, to the fullest extent permitted by the policies, rules, or regulations, as amended from time to time (including their interpretations thereof) by third party network providers.

Trendar License Art. 4.2. While we previously found this language to be (partially) ambiguous, we determined that Comdata and Flying J intended that the Trendar Network would process TCH MasterCards the same way it processed Comdata's proprietary card. *See Flying J I*, 405 F.3d at 836 ("[T]he Trendar License [provides] Flying J with data capture and purchase control similar to the so-called 'Comdata model.'"). Flying J argues that in so holding "[the Tenth Circuit] construed the Trendar License as adopting the 'primary model' and did not preclude further enforcement of the license consistent with that construction." Reply at 9. However, using the "same" processing model as Comdata's does not necessarily mean Flying J need not obtain merchant consent. Comdata does not process proprietary functions on its own cards without merchant consent. *Flying J I*, 405 F.3d at 837 ("[M]erchant consent was central to Comdata's commercial arrangements

-12-

and therefore to the Comdata model."). By dismissing the dual-processing method, we did not endorse another method of circumventing merchant consent. *Id.* at 835 ("[Comdata] did not contemplate or intend that the Trendar License would lead to proprietary processing of TCH MasterCards at unaffiliated merchants, much less that this would be accomplished through a dual-processing model.").

Furthermore, the license requires that the processes be carried out in accordance with third-party rules. MasterCard, the relevant third party, currently requires merchant consent. *Id.* at 828. Comdata, in the license, did not agree to violate MasterCard regulations nor assist Flying J in violating MasterCard regulations by forcing merchants to accept the proprietary functions of the TCH MasterCards. Flying J may not evade this requirement simply by asking the court to make a ruling that is "subject to obtaining MasterCard Approval," where it is clear that no approval is forthcoming. *See* Aplt's App. vol. IV, at 976. Our understanding of the license and our prior ruling accord with the district court's determination: Flying J did not bargain for access to merchants who refuse to consent to the TCH MasterCard's proprietary functions.

Requiring implementation of the primary model would improperly allow Flying J access to merchants who do not consent to accept Flying J's TCH MasterCard. In the settlement agreement, Flying J gained access to

Comdata's Trendar processing system. Comdata configured the system to carry out proprietary functions where merchants consented to accept those functions of the TCH MasterCard. Flying J brought this suit arguing for a certain processing model at all Trendar locations, including those that for competitive reasons or otherwise refuse to consent to allow the proprietary functions on the TCH MasterCard. *Flying J II*, 2007 WL 3550342, at \*3 ("It appears that plaintiffs thus propose to avail themselves of the existing merchants' consent to acceptance of Comdata proprietary cards by deeming TCH proprietary cards to be Comdata proprietary cards, regardless of whether those merchants would otherwise consent to accept TCH cards and proprietary processing of TCH card transactions."). As we alluded to in our earlier opinion and now squarely hold, Flying J is not entitled to access to these merchants; therefore, the district court properly refused to consider implementing the primary model.

Flying J also argues that the district court misunderstood its own earlier ruling on the motion to clarify. Aplts' Br. at 25-30. While the district court referenced the motion to clarify, it was not central to the district court's decision, *see Flying J II*, 2007 WL 3550342 at \*3, nor is it central to ours. Regardless of the district court's prior ruling clarifying its later-overturned order and regardless of the district court's possible misinterpretation of that ruling, we remain convinced that Flying J is not

entitled to implement the primary model.

Moreover, the district court properly refused to consider the request in light of Flying J's earlier repudiation of that model. On remand, parties may not resurrect arguments that they explicitly abandoned during earlier phases of the litigation where there is no evidence of a change in circumstances. *See generally Copart, Inc. v. Admin. Rev. Bd., U.S. Dep't of Labor*, 495 F.3d 1197, 1200-01 (10th Cir. 2007) (explaining that law of the case and its corollary, the mandate rule, limit which arguments parties may raise after remand). Prior to the evidentiary hearing on the motion to enforce, Flying J acknowledged that the primary model violated MasterCard regulations and therefore consideration of the model was moot. *See Flying J I*, 405 F.3d at 829 ("Because MasterCard rejected its original proposal, Flying J relied exclusively on the dual-processing model at the evidentiary hearing."). Nothing in the record indicates that MasterCard has changed its stance on the primary model. Because Flying J abandoned this argument during an earlier phase of the litigation, it may not now, nor could it in the district court argue for implementation of the primary model.

B.     The District Court Did Not Abuse its Discretion in Determining the Amount of Attorney's Fees.

Though Flying J argues that we should consider de novo whether block

-15-

billing as a matter of law requires a reduction in attorney's fees, we generally review awards of fees for an abuse of discretion. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).

The settlement agreement authorizes reasonable attorneys' fees for the prevailing party in connection with any lawsuit arising out of the settlement agreement. Aplts' App. vol. I, at 57 (Settlement Agreement at 11 ¶ 12). As discussed above, the district court correctly determined Comdata was the prevailing party and awarded fees. Comdata submitted its fees, and Flying J made detailed objections. The court carefully considered the parties' positions in a 51-page opinion, 44 pages of which addressed attorneys' fees.

The district court held that the team of lawyers for Comdata was not overstaffed and inefficient, given the nature of the case and the significant dollar amount involved for the defendants. *Flying J II*, 2007 WL 3550342, at *16. The court did hold that Comdata's counsel's use of block-billing made it more difficult for the court to determine the reasonableness of the fee. Nonetheless, the court found the fee reasonable. Flying J could not persuade the court otherwise by comparing what Flying J's counsel billed ($488,505) with what Comdata's counsel billed ($1,026,806), over the same period. Perhaps recalling the Trojan Horse and the Ilium analogy, the court noted that "[t]he fact that it cost more to win the day than it did to lose does not indicate that 'more' was either unreasonable or excessive." *Id.* at *20.

-16-

In our view, such a large discrepancy between attorney's fees might raise the judicial eyebrow, especially when counsel on both sides have zealously represented their clients. However, the district court's failure to infer unreasonableness in this case does not indicate that the fee should be overturned. The district court had a better feel for the case, and it did not abuse its wide discretion in its carefully reasoned opinion. For that reason, we uphold the district court's award.

Additionally, we decline Flying J's invitation to craft a rule of law requiring a reduction in fees when attorneys have block billed. So-called block billing consists of attorneys recording large blocks of time for tasks without separating the tasks into individual blocks or elaborating on the amount of time each task took. Use of this rather imprecise practice may be strong evidence that a claimed amount of fees is excessive. *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998) ("The use of billing practices that camouflage the work a lawyer does naturally and quite correctly raise suspicions about whether all the work claimed was actually accomplished or whether it was necessary. This concern is particularly important in a situation where a party is seeking to have his opponent pay for his own lawyer's work."). Even so, we remain convinced that the decision whether block billing indicates an unreasonable claim should remain with the district court who should be allowed to exercise its

discretion accordingly. *See Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1207 (10th Cir. 2008) ("[M]atters concerning, for example, how much time was properly spent carrying out a certain litigation task are far better determined by the district court, which is intimately familiar with the parties, the attorneys, and the complete course of the litigation, than by an appellate court."). Certainly if the court awards additional fees to Comdata and if Comdata's attorneys continue this practice, the district court should again strongly consider it an indication that the claimed fees are excessive.

C.    Judgment in Favor of Comdata is Stayed as to Flying J Inc. but not as to Co-Parties, TCH LLC, CFJ Properties, TON Services, and TFJ

While this appeal was pending, Flying J Inc. filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. *See In re Flying J Inc.*, No. 08-13384 (Bankr. D. Del. Dec. 22, 2008). Under 11 U.S.C. § 362(a), actions "to recover a claim against" Flying J Inc. are automatically stayed pending the bankruptcy proceedings. Flying J has asked that this court extend the automatic stay protections to co-plaintiffs, TCH, CFJ Properties, TON Services, and TFJ. These entities joined Flying J Inc.'s appeal and have not filed for bankruptcy. Automatic stay provisions generally do not extend to solvent co-parties. *See Mason v. Okla. Turnpike Authority*, 115 F.3d 1442, 1450 (10th Cir. 1997). Flying J

Inc. urges this court to extend the stay to protect its co-parties because Flying J Inc. is a necessary party and the real party in interest to this case. *See* Flying J Inc.'s Notice of Chapter 11 Bankruptcy Filing at 3 (citing *In re Fernstrom Storage and Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991)); *see also Okla. Federated Gold and Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 142 (10th Cir. 1994) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). Because nothing in the record suggests Flying J Inc.'s co-parties would be entitled to this exception, we do not stay this case as to TCH, CFJ Properties, TON Services, and TFJ.

## III. CONCLUSION

Accordingly, we AFFIRM the decision of the district court. However, judgment is stayed, as to appellant Flying J Inc. only, pursuant to the automatic stay provisions of 11 U.S.C. § 362, pending further order of this court. By separate order, counsel for Flying J Inc. will be directed to file periodic reports advising this court of the status of Flying J Inc.'s bankruptcy proceedings.

Submitted for the Court

Robert H. Henry
Chief Circuit Judge

-19-