**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BP PIPELINES (NORTH AMERICA)
INC., a Maine corporation; CCPS
TRANSPORTATION, LLC, a limited
liability company,

        Plaintiffs – Appellees,

v.

C.D. BROWN CONSTRUCTION, INC.,
an Oklahoma corporation,

        Defendant – Appellant,

SHIDLER TELEPHONE COMPANY, an
Oklahoma corporation,

        Defendant.

No. 09-5081 & 10-5087
(D.C. No. 4:06-CV-00569-GKF-PJC)
(D. N.D. Okla.)

**ORDER**

Before **LUCERO**, **McKAY**, and **O'BRIEN**, Circuit Judges.

      The Court has, sua sponte, determined to amend the original order and judgment

to correct an error on pages 11-12 regarding a minute order denying a motion for

reconsideration. The amended decision is attached. The Clerk is directed to reissue the

decision as amended, nunc pro tunc, to February 23, 2012.

Entered for the Court

Elisabeth A. Shumaker, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 23, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BP PIPELINES (NORTH AMERICA)
INC., a Maine corporation; CCPS
TRANSPORTATION, LLC, a limited
liability company,

        Plaintiffs – Appellees,

v.

C.D. BROWN CONSTRUCTION, INC.,
an Oklahoma corporation,

        Defendant – Appellant,

SHIDLER TELEPHONE COMPANY, an
Oklahoma corporation,

        Defendant.

No. 09-5081 & 10-5087
(D.C. No. 4:06-CV-00569-GKF-PJC )
(D. N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **O'BRIEN**, Circuit Judges.

While burying telephone cable for Shidler Telephone Company (Shidler), C.D.

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

Brown Construction (Brown) struck an underground oil pipeline owned by CCPS Transportation (CCPS) and operated by BP Pipelines North America (BP) (hereinafter CCPS and BP will collectively be referred to as BP). BP brought a negligence suit against Brown for the costs it incurred in repairing the pipeline and cleaning up the resulting oil spill. The jury found total damages to be $1.4 million and determined Brown was 75% at fault. Judgment was entered in favor of BP for $1,050,000. BP moved for attorneys' fees under Okla. Stat. Ann. tit. 12, § 940, which allows for an award of attorneys' fees to a prevailing party "[i]n any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action." The district court granted the motion and awarded BP fees totaling $341,406.

Brown brought two separate appeals. In Appeal No. 09-5081, it argues BP's claim for remediation damages was a contribution claim which should have been dismissed under Okla. Stat. tit. 12, § 832(H)(2)(1995)[1] because Brown had been released from liability by a settlement agreement in a related state court lawsuit brought by the affected landowner. In Appeal No. 10-5087, Brown claims BP is not entitled to fees under § 940 or, in the alternative, it was not entitled to certain fees. We disagree on all counts and affirm.

---

[1] This statute provides in relevant part: "When a release . . . or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death . . . [i]t discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor."

## I. THE OKLAHOMA UNDERGROUND FACILITIES DAMAGE PREVENTION ACT

The Oklahoma legislature enacted the Underground Facilities Damage Prevention Act (the Underground Facilities Act), Okla. Stat. tit. 63, §§ 142.1- 142.12 (2004), to protect, *inter alia*, underground facilities within the state from damage as a result of excavation.[2] *See Jones v. Okla. Natural Gas Co.*, 894 P.2d 415, 418 (Okla. 1994). The Act requires all operators of underground facilities to register the location of their underground facilities with a statewide notification center—the Oklahoma One-Call System or "Call OKIE." Okla. Stat. Ann. tit. 63, §§ 142.2(8), 142.3. (R. (Appeal No. 09-5081) Appellant's Appx. Vol. II at 1025.) Prior to digging, an excavator must contact Call OKIE and provide it with the following information: (1) the name of the individual providing the notice; (2) the location of the proposed area of excavation; (3) the name, address and telephone number of the excavator; (4) the excavator's field telephone number, if one is available; (5) the type and extent of the proposed work; (6) whether or not the discharging of explosives is anticipated; and (7) the date and time when work is to begin. *Id.* at §§ 142.5, 142.6(A), (D). With this information, Call OKIE creates an "OKIE ticket" which is sent to all operators with underground facilities "in or near the proposed area of excavation." *Id.* § 142.6(A). (R. (Appeal No. 09-5081) Appellant's Appx. Vol. II at 1027-28.)

Upon receiving an OKIE ticket, an operator has forty-eight hours in which to

---

[2] "'Excavate' means to dig, compress or remove earth, rock or other materials in or on the ground by use of mechanized equipment or blasting, . . . ." Okla. Stat. Ann. tit. 63, § 142.2(5).

"locate and mark or otherwise provide the approximate location of [its] underground facilities . . . in a manner as to enable the excavator to employ hand-dug test holes to determine the precise location of the underground facilities in advance of excavation." Okla. Stat. Ann. tit. 63, § 142.6(B). If an excavator fails to provide notice of a proposed excavation, it is liable for any damage resulting to the underground facilities as a result of that excavation. *Id.* § 142.6(A). An excavator is also liable for the repair of the underground facility if it "damages or cuts an underground facility, as a result of negligently failing to comply with the provisions of the [Underground Facilities Act] or as a result of failing to take measures for the protection of an underground facility." *Id.* § 142.10(B).

## II.   FACTUAL BACKGROUND

In 2004, Shidler hired Brown to replace the entire telephone system in Wynona, Oklahoma, and the surrounding area. The project required Brown to bury a main line west from Wynona along County Road 320 with a "drop" line from the main line to each residence. (R. (Appeal No. 09-5081) Appellant's Appx. Vol. II at 698.) Brown was responsible for locating all underground facilities prior to digging.

In early October 2004, Brown made several telephone calls to Call OKIE concerning the proposed excavation. Because BP operated a crude oil pipeline in the area of the proposed excavation, it received the OKIE tickets generated from these calls. According to the tickets, the proposed project would cross BP's pipeline once at County Road 320. The tickets did not indicate, however, that Brown would be burying cable south of County Road 320. Rather than mark its pipeline with flags, BP met with Brown

- 3 -

twice to discuss the project. In the first discussion, Brown agreed to contact BP when it came close to crossing the pipeline at County Road 320 so BP could be present for the crossing. In the second discussion, BP met Brown at the location where the excavation was to cross BP's pipeline. The parties determined the depth of BP's pipeline and agreed the telephone cable could be placed over the pipeline so long as it was encased in steel. Brown never informed BP during these conversations that it would be burying cable on property south of County Road 320.

On October 19, 2004, Brown was burying drop line cable south of County Road 320 on property belonging to Cara Mae Edwards and Terry Don Kennedy (the landowners) when it struck and punctured BP's pipeline, spilling over 2,000 barrels of oil. The pipeline was shut down and eventually repaired. BP hired Conestoga-Rovers & Associates (CRA) to remediate and restore the property. BP expended $1,457,190.90 to repair the pipeline and to clean up the property.

On June 21, 2006, the landowners filed suit against Brown, BP and CRA in Oklahoma state court. Their complaint was titled "Petition for Nuisance" and alleged that as a result of the pipeline break, their "property was saturated with a substantial amount of crude oil, contaminating [their] property thereby destroying soil, water, and livestock."[3] (R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 294-95.) They further

_____

[3] The landowners' complaint was attached to BP's response to Brown's motion to reconsider the district court's ruling on BP's damages. According to BP, because the district court denied Brown's request for leave to file its motion to reconsider, BP's response was moot and therefore the landowners' complaint is not a part of the record in this case. BP is mistaken. As we explain below, Brown requested leave to file a motion

- 4 -

alleged "[t]hat as a direct, sole and proximate result of the negligence of . . . BP . . . [they] incurred extensive property damage, endangered their health, and destroyed the comfort and security of their own property" and "[CRA] failed to restore [their] property to its previous condition."[4] (R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 295.) Brown filed a third-party complaint in the state court action against CRA for contribution and indemnity.

## III.   PROCEDURAL BACKGROUND

On October 18, 2006, believing Brown had failed to notify Call OKIE that it would be excavating in the area of the pipeline strike, BP sued Brown[5] in federal court alleging negligence and negligence per se.  BP claimed it was damaged as a result of Brown's negligence "by having to repair the Pipeline and to remediate and restore the areas impacted by the Pipeline strike . . . ."  (R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 4.)  BP also alleged that "[i]f and to the extent [it] might be found to be liable to [the] Landowners or any other third party for any damages that [the] Landowners or any other third party claim to have sustained as a result of [Brown's] negligent strike of the

---

to determine BP's damages.  The district court denied <u>that</u> motion.  Therefore, Brown filed a motion to reconsider.  The court <u>did not deny</u> Brown leave to file the motion to reconsider and in fact allowed BP to respond to the motion.  The court never ruled on Brown's motion to reconsider.  Nevertheless, that motion, as well as BP's response to it, is a part of the record in this case.  Consequently, the state court complaint attached to BP's response is also a part of the record.

[4] The state court complaint was later amended to correct a defendant's name**.**

[5] BP also sued Shidler, who filed a motion for summary judgment alleging Brown was an independent contractor and therefore it could not be held liable for Brown's negligence.  The district court agreed and granted Shidler's motion.  BP has not appealed from that determination.

Pipeline, [it is] entitled to contribution from [Brown] pursuant to [Okla. Stat. Ann. tit. 12, ] § 832 and/or indemnity . . . ."[6] (*Id.* at 7.)

A.      Brown and BP's Motions for Summary Judgment Motion

Brown filed a motion for summary judgment, arguing it was entitled to judgment on BP's negligence and negligence per se claims because it complied with the Underground Facilities Act by providing timely notice to Call OKIE of its proposed excavation. It claimed the pipeline strike was the direct result of BP's failure to mark its pipeline upon receiving the Call OKIE tickets. In a footnote, Brown stated it was not addressing BP's contribution claim because it would fail as a matter of law if the court ruled in its favor on the negligence claims.

BP responded to Brown's motion, arguing it did not mark its pipeline because Brown's OKIE tickets had not identified the area of the pipeline strike as an area covered by the proposed excavation. Had the OKIE tickets adequately identified the proposed excavation, BP claimed, Brown would not have struck the pipeline. Later, BP filed its own motion for partial summary judgment, arguing Brown's failure to comply with the Underground Facilities Act directly caused the pipeline rupture. It alleged Brown's OKIE tickets had only indicated it was installing underground cable along County Road 320; the tickets had not mentioned the drop to the landowners' residence where the pipeline strike occurred.

---

[6] BP also brought a claim for trespass and indemnification. These claims are not at issue on appeal.

B.      Settlement of Landowners' State Court Lawsuit

While Brown's summary judgment motion was pending in federal court, the landowners entered into a "Confidential Settlement Agreement and Release of All Claims" (Settlement Agreement) with BP, Brown, CRA and Shidler in the state case.[7] (R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 308.)  The Settlement Agreement says the state court lawsuit was filed "as a result of [BP, Shidler, Brown and CRA's] alleged negligence and nuisance . . . on or about October 19, 2004 . . . ." (*Id.* at 308.)  It also provides that BP, Shidler, Brown and CRA were to pay $235,000 to the landowners as consideration for their dismissal with prejudice of that lawsuit.  Of this total, BP and Brown were to each pay $100,000.

The Settlement Agreement also acknowledges Brown's third-party claims against CRA for contribution and indemnity and that BP potentially had similar claims against CRA.  The Settlement Agreement releases and/or waives these claims with the following provisions:

> (c) [Brown] hereby agrees to release [CRA] from any and all claims that it has asserted or could have asserted against [CRA]. . . and dismiss with prejudice [its] claims for indemnity and contribution against [CRA] in both the [state case] and in the action filed in the United States District Court for the Northern District of Oklahoma, case number 2006-CIV-00569-GFK-PJC [this case] and fully discharge and release [CRA] for the same.
>
> (d) BP . . . hereby agree[s] to waive any potential claims for indemnity and contribution against [CRA] in both the [state case] and in the action filed in the United States District Court for the Northern District of Oklahoma, case number 2006-CIV-00569-GFK-PJC [this case] and fully discharge and release [CRA] for the same.

---

[7] While the Settlement Agreement is labeled "confidential," the parties did not file it under seal or redact any portions of it.

(R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 310.)

Additionally, the Settlement Agreement releases any potential claims BP and Brown had against each other for indemnity or contribution "for the monies paid herein." (R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 311.) The Agreement states:

> (e) The Parties specifically understand and agree that the settlement of this action includes all of these claims mentioned above and specifically any potential actions between [BP, Brown, CRA and Shidler] by way of indemnity, contribution, contractual obligation or subrogation in this action for the monies paid herein.

(R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 310-11.)

The Agreement concludes with the following provision:

> IT IS FURTHER AGREED that this Release shall be final and binding upon all parties, their heirs, successors and assigns of whatever nature and description and that no claim, be it derivative or otherwise, may ever be made against the parties released with respect to the matters covered by this Release . . . .

(R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 312.)

A. <u>C. Brown's Reply in Support of its Summary Judgment Motion, Brown's Motion to Determine Damages and Brown's Motion to Reconsider</u>

Several weeks after the parties executed the Settlement Agreement in state court, Brown filed its reply brief in support of its summary judgment motion in federal court, again claiming it had complied with the Underground Facilities Act and the pipeline break was due to BP's failure to mark its pipeline. This time, however, with respect to BP's contribution claim, Brown argued it should be dismissed under Okla. Stat. tit. 12, § 832(H)(2) because Brown had obtained a release in the state court case. After holding a

hearing, the district court denied Brown's motion for summary judgment as to BP's negligence and negligence per se claims but granted it as to the contribution claim.

Brown requested leave to file a motion to determine BP's damages. In its proposed motion, Brown argued BP's damages on its negligence claims were limited to its lost oil and the cost of repairing the damaged pipeline. Relying on *Conoco Inc. v. ONEOK, Inc.*, it claimed BP could not recover the costs it paid to CRA to remediate the site because these costs were only recoverable under a contribution claim and that claim had been dismissed by the district court's summary judgment. 91 F.3d 1405 (10th Cir. 1996).

The court held another hearing wherein it explained it had granted summary judgment in favor of Brown on BP's contribution claim believing that claim related only to the $100,000 the landowners received from BP in the state court case, which had been discharged by the Settlement Agreement. Both parties agreed that any contribution claim BP may have had for the $100,000 it paid to the landowners in the state court case was released and discharged by the Settlement Agreement. However, the parties disputed whether the approximately $1.5 million BP incurred to remediate the spill site was also discharged by the district court's grant of summary judgment to Brown on BP's contribution claim–Brown saying it was; BP claiming it was not. The court determined that regardless of whether these remediation damages were properly characterized as part of BP's negligence claims or its contribution claim, it had never intended by its summary judgment ruling to foreclose BP from seeking these damages. Therefore, it denied Brown's request for leave to file a motion to determine BP's damages and amended its

- 9 -

summary judgment order to reflect it did not pertain to BP's claim for remediation damages.

Brown filed a motion to reconsider the ruling regarding the remediation damages. Again relying on *Conoco*, Brown argued BP could only seek reimbursement for its remediation damages via a contribution claim. It argued that claim had been extinguished by the court's grant of summary judgment to Brown and/or the Settlement Agreement—either under its express terms or due to operation of Okla. Stat. Ann. tit. 63, § 832(H)(2). Therefore, Brown again claimed BP's damages should be limited to those it incurred in repairing the pipeline and for its lost product.

On that same day, the court held a pretrial conference hearing wherein it brought up Brown's motion to reconsider. It said it believed the *Conoco* case was distinguishable and the Settlement Agreement's terms pertained only to the settlement money the landowners received, not to the remediation damages sought by BP in this case. In the end, however, the court withdrew its grant of summary judgment to Brown on BP's contribution claim for procedural reasons as Brown had not raised any argument concerning that claim until its reply brief. It allowed BP time to file a response to Brown's motion to reconsider.

In its response, BP argued its claim for remediation damages arose directly from Brown's breach of its duty under the Underground Facilities Act to provide BP with notice of its proposed excavation so as to prevent damage to BP's pipeline. BP claimed this is a "quintessential negligence claim." (R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 279.) It also argued: (1) *Conoco* was distinguishable; (2) the state court

- 10 -

Settlement Agreement did not address or release its claim for remediation damages in this case; and (3) § 832(H)(2) did not apply. On April 14, 2009 (minute order at docket entry 133), the court denied the motion to reconsider.

B.    D.  Trial

The case proceeded to trial on a single claim of negligence/negligence per se. At trial, Brown tried to show it was not negligent or, in the alternative, BP was contributorily negligent in failing to mark its pipeline and to follow its own rules and procedures. Brown also attempted to show the remediation damages sought by BP were excessive and unreasonable. At the close of BP's case, Brown moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. It renewed its claim that the remediation damages could only be sought via a contribution claim and therefore BP's damages on its negligence claim were limited to recovering its lost profits and the costs of the pipeline repair. It further claimed it had satisfied its duties under the Underground Facilities Act. The court denied the motion. The jury found damages totaling $1.4 million and concluded Brown and BP were 75% and 25% at fault, respectively. Consequently, the court entered judgment in favor of BP in the amount of $1,050,000.

E.    BP's Motion for Attorneys' Fees

BP filed a motion for attorneys' fees under Okla. Stat. Ann. tit. 12, § 940, which allows an award of attorneys' fees to a prevailing party "[i]n any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action." Brown opposed the motion. Relevant here, it argued BP was not

entitled to an award of attorneys' fees under § 940 because BP failed to recover any damages to its property, i.e., its pipeline. While BP sought damages for the repair of its pipeline, the only evidence of damages it presented to the jury was the costs it incurred in remediating the surrounding property–property BP did not own. According to Brown, because the damages award was based on damage to the property of third-parties (the landowners), BP did not prevail on a claim of damages to its property as required for an award of fees under § 940. In the alternative, Brown claimed BP was not entitled to any of the fees requested which were represented by "block billing," i.e., time entries in which BP billed for work on both the instant action and the state court lawsuit but failed to specify the time spent on each. Because of the lack of clarity in these time entries, Brown argued BP had failed to satisfy its burden of showing the amount of fees requested was reasonable.

BP's motion for attorneys' fees was referred to a magistrate judge, who determined BP was entitled to fees under § 940. As to the fees represented by block billing, the magistrate determined much of the time expended in the state case was also necessary for the instant case, rejecting Brown's argument that all time represented by block billing should be excluded. Nevertheless, because of the imprecise nature of the block billed time entries, the magistrate concluded BP was not entitled to all of the time it claimed. Therefore, the magistrate judge recommended a 40 percent reduction in the fees represented by block billing.

Brown objected to the magistrate's recommendation, again claiming BP was not entitled to an award of attorneys' fees under § 940 because it had not presented any

- 12 -

evidence at trial of damages to its pipeline–and therefore it did not recover for injury to its property. It also objected to the 40 percent reduction for block billing, claiming it was insufficient and the entire amount of fees represented by block billing should have been deducted.

The district judge reviewed Brown's objections de novo, but found them lacking. In doing so he noted BP's evidence of its pipeline repair costs, including five invoices relating to the repair of the pipeline. Moreover, BP incurred costs in recovering the oil– its tangible property–which had to be removed from the site and transported to BP's tank farm in Cushing, Oklahoma. While Brown characterized these costs as remediation costs, the judge determined they were also properly characterized as damages to BP's property due to Brown's negligence. As to the 40 percent reduction for block billing, the court determined it was reasonable and appropriate. The court adopted the magistrate's recommendation and awarded BP fees totaling $341,406.

## IV. DISCUSSION

C. A. Appeal No. 09-5081

Brown alleges the district court erred in allowing BP's claim for remediation damages to go to the jury because those damages are only recoverable by way of a contribution claim, citing *Conoco*. And, under Okla. Stat. tit. 12, § 832(H)(2), when one of two or more persons liable in tort for the same injury obtains a release in good faith, that tortfeasor is discharged from all liability for contribution to any other tortfeasor. Because Brown obtained a release in good faith from the landowners in the Settlement Agreement, it claims it cannot be held liable for contribution to BP for the remediation

- 13 -

damages.

BP says the remediation damages it seeks in this case are those it directly incurred in cleaning up the site of the oil leak pursuant to its duties under state and federal law. Because it is not seeking any of the money it paid to the landowners in the state court lawsuit, its claim against Brown is not a contribution claim but rather a direct negligence claim. Therefore, according to BP, Okla. Stat. tit. 12, § 832(H)(2) does not apply. As to the Settlement Agreement, BP claims the parties mutually released each other only from any claims for contribution with respect to the landowners' nonremediation-related damages. The Agreement does not express any intent by the parties to affect BP's claim against Brown for the remediation damages in the instant lawsuit.[8]

Neither party objects to applying Oklahoma substantive law in this case. "[A]

---

[8] BP also claims Brown did not preserve the arguments it raises on appeal because (1) Brown failed to raise them either in a motion for summary judgment or a Rule 50(b) motion at the close of all the evidence and (2) Brown never requested a jury instruction barring BP's claim for remediation damages or objected to the court's instructions allowing remediation damages. We disagree. The record is replete with instances where Brown raised its appellate arguments with the district court, including in its (1) reply to BP's response to Brown's motion for summary judgment, (2) motion for leave to file a motion to determine BP's damages, (3) motion to reconsider the denial of the motion for leave and (4) Rule 50(a) motion for judgment as a matter of law at the close of BP's evidence. It also raised them in the pretrial order and objected to the court's proposed jury instruction allowing the jury to award BP remediation damages in the event it found in BP's favor. Indeed, the district court noted the persistency of Brown's arguments at the pretrial conference and at trial.

Contrary to BP's claim, Brown was not required to raise its arguments in a Rule 50(b) motion in order to preserve them for appeal. Rule 50 motions challenge the sufficiency of the evidence rather than questions of law. *Ruyle v. Cont'l Oil Co.*, 44 F.3d 837, 841 (10th Cir. 1994). Brown's arguments are questions of law. "A party who properly raises an issue of law before the case goes to the jury need not include the issue in a motion for a directed verdict in order to preserve the question on appeal." *Id.* (quotations omitted)

- 14 -

federal district court's state-law determinations are entitled to no deference and are reviewed de novo." *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998). The parties' arguments turn on whether BP's claim for remediation damages against Brown is properly characterized as a negligence claim or a contribution claim.

By all measures BP's claim for remediation damages against Brown appears to be a direct negligence/negligence per se claim. BP alleged: (1) Brown had a duty under the Underground Facilities Act to provide operators of underground facilities like BP with adequate notification of its proposed excavation so as to prevent damage to the operator's underground facilities; (2) Brown breached that duty by failing to inform Call OKIE it would be excavating in the area where the pipeline strike occurred; (3) BP was injured by Brown's breach in that it incurred costs in repairing its pipeline and cleaning up the oil spill; and (4) Brown's breach was the proximate cause of BP's injury in that had Brown provided Call OKIE with the requisite information, Brown would not have struck BP's pipeline. *See Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997) ("[T]he three essential elements of a prima facie case of negligence are: (1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury being proximately caused by the defendant's breach."); *see also Busby v. Quail Creek Golf & Country Club*, 885 P.2d 1326, 1329 (Okla. 1994) (when the defendant violates a statute, he is negligent *per se* if the other elements of negligence are present and (1) the injury was caused by the statutory violation, (2) the injury was of a type intended to be prevented by the statute and (3) the injured party was of the class of persons meant to be protected by the statute).

- 15 -

On the other hand, BP's claim against Brown for the remediation damages does not fit the typical contribution claim. A contribution claim results when a <u>joint tortfeasor</u> pays more than his proportionate share to a <u>third-party injured</u> as a result of the tort. *See* Okla. Stat. Ann. tit. 12, § 832(A), (B); *see also Barringer v. Baptist Healthcare of Okla.,* 22 P.3d 695, 698 (Okla. 2001). The paying tortfeasor has a right to recover from the other tortfeasor his proportionate share so as to prevent the paying tortfeasor from paying more than his share. *See* Okla. Stat. Ann. tit. 12, § 832(B); *see also Barringer,* 22 P.3d at 698. In this case, BP is not a joint tortfeasor who paid the remediation damages to an injured third-party and is now seeking to be reimbursed by Brown for its share of those damages. Rather, BP is <u>the</u> injured party and is seeking redress for <u>its</u> injuries. The fact the jury determined BP was 25% at fault, while reducing its total damages, does not affect its injured party status. *See* Okla. Stat. Ann. tit. 23, § 13 ("In all actions . . . for negligence resulting in . . . injury to property, contributory negligence shall not bar a recovery, unless any negligence of the person so injured . . . is of greater degree than any negligence of the . . . corporation causing such damage, or unless any negligence of the person so injured . . . is of greater degree than the combined negligence of any persons, firms or corporations causing such damage."); *see also*, Okla. Stat. Ann. tit. 23, § 14 ("Where such contributory negligence is shown on the part of the person injured . . . the amount of the recovery shall be diminished in proportion to such person's contributory negligence.").

Despite every indication that BP's claim against Brown is a straightforward negligence claim, Brown argues it is one for contribution, relying on our *Conoco* case.

There, Conoco owned and operated a gasoline and fuel oil pipeline which ran north and south through Del City, Oklahoma. Two years after Conoco installed its pipeline, ONEOK installed a natural gas pipeline running east and west through Del City. In 1976, Conoco's pipeline ruptured, releasing gasoline and fuel oil to the surrounding area. Conoco repaired its pipeline and cleaned up the leak site without seeking reimbursement from ONEOK. Fifteen years later, in 1991, a landowner near the leak site discovered gasoline in his water well. The State of Oklahoma investigated and determined the 1976 leak was the source of the gasoline. The State ordered Conoco to remediate the leak because state waters and other properties had been polluted.

In 1993, the Moores, whose property was also within the vicinity of the 1976 leak, filed suit against Conoco alleging the leak polluted their soil and underground water. Conoco then filed a third-party complaint against ONEOK, alleging the 1976 leak was caused by ONEOK's pipeline resting on top of Conoco's pipeline and causing a dent at the location of the rupture. Conoco settled with the Moores and proceeded to trial against ONEOK. During the jury instruction conference, Conoco requested the jury be instructed it could find ONEOK liable under both a contribution and unjust enrichment theory with respect to the costs Conoco incurred in cleaning up the oil spill per the State's orders and in settling with the Moores. The district court concluded the cleanup costs would be submitted solely under an unjust enrichment theory while the settlement costs would be submitted solely under a contribution theory. The jury determined Conoco and ONEOK were equally negligent and Conoco was entitled to contribution from ONEOK for fifty percent of the settlement costs. It found in favor of ONEOK on the unjust enrichment

claim.

On appeal, Conoco claimed the district court erred in not submitting the state-ordered cleanup costs to the jury under a contribution theory. We agreed, saying:

> Conoco committed a tort and the State of Oklahoma suffered an injury when the gasoline and fuel oil from the 1976 leak polluted state waters. The parties stipulated that the State ordered Conoco to remediate the 1976 leak site. [ONEOK] contends, however, that the expenses incurred by Conoco to remediate the leak were Conoco's own damages and therefore form the basis of an independent claim rather than a contribution claim. We disagree. The costs Conoco incurred in complying with the State's order were the direct result of a tort committed against state waters, and Conoco presented evidence at trial that [ONEOK] was jointly and severally liable for the leak that caused the pollution. We therefore hold that the jury should have been instructed under a contribution theory on the state-ordered remediation costs.

91 F.3d at 1409 (emphasis added) (citation omitted).

*Conoco* is distinguishable. There were three categories of damages Conoco incurred as a result of the pipeline rupture: (1) the costs incurred in repairing its pipeline and cleaning up the oil spill immediately after its pipeline ruptured; (2) the costs incurred in settling with the Moores for damages the leak caused to their soil and groundwater; and (3) the costs Conoco incurred as a result of the State ordering it to clean up and remediate the site after oil from the leak was found in State waters. The case involved the latter two categories of damages and this Court determined that both categories should have been submitted to the jury under a contribution theory. That is because both categories involved injury to a third party–the Moores and the State. Conoco paid for these damages but also believed ONEOK was liable. Therefore, it sought reimbursement from ONEOK for ONEOK's share of these damages. That is a typical contribution

claim. On the other hand, in this case, BP did not pay the remediation damages as a result of injury to a third-party but instead incurred these damages as the injured party. Therefore, this case involves the first category of damages–an issue *Conoco* did not address and which constitute BP's own injury.

We recognize that BP, like Conoco, may have owed a duty to the State not to pollute its waters. *See* Okla. Stat. Ann. tit. 27A, § 2-6-105(A) ("It shall be unlawful for any person to cause pollution of any waters of the state or to place or cause to be placed any wastes in a location where they are likely to cause pollution of any air, land or waters of the state. Any such action is hereby declared to be a public nuisance."). However, unlike in *Conoco*, there is no evidence the oil in this case reached State waters and therefore no evidence the State was an injured party as a result of the oil spill.[9]

Although BP's claim against Brown in this case certainly appears to be a direct negligence action, we need not resolve the issue. Whether it is a negligence or contribution action, the result is the same–neither Okla. Stat. tit. 12, § 832(H)(2) nor the Settlement Agreement bar it.

Assuming, without deciding, that BP's claim is a direct negligence claim, Brown's argument under Okla. Stat. tit. 12, § 832(H)(2) fails. That statute provides in relevant part:

---

[9] Both parties also say BP was strictly liable to clean up the oil spill under 33 U.S.C. § 2702(a) of the Oil Pollution Act. We are not persuaded. That statute is applicable only to the discharge of oil "into or upon the navigable waters or adjoining shorelines" of the United States. *See* 33 U.S.C. § 2702(a). Nothing in this case suggests that the oil spill reached either navigable waters or an adjoining shoreline.

> When a release . . . or a similar agreement is given in good faith to one of two or more persons liable in tort *for the same injury* or the same wrongful death . . . [i]t discharges the tort-feasor to whom it is given from all *liability for contribution* to any other tort-feasor.

(Emphasis added.)  Because the statute only discharges a released tortfeasor from contribution liability, it does not apply where BP is pursuing a direct negligence claim against Brown.

The same result occurs even if BP's claim is one for contribution.  The statute discharges a tortfeasor to whom a good faith release is given (Brown) from all liability for contribution to any other tortfeasor (BP) who is liable in "tort for the same injury . . . ."  In the landowners' case, Brown and BP were liable in tort for the injuries incurred by the landowners which, according to their state court amended complaint, were extensive property damage (including the contamination and destruction of soil, water and livestock), the endangerment of their health, and "the [destruction of] the comfort and security of their own property."  (R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 306.)  The release obtained by Brown from the landowners pertained to only the landowner's injuries, which are separate and apart from the injuries BP claims in this case–the repair of the damaged pipeline and cleanup of the spill.  Consequently, even if BP's claim against Brown sounds in contribution, the release Brown obtained in the state court lawsuit does not bar a contribution claim by BP against Brown in this case under Okla. Stat. tit. 12, § 832(H)(2).

Finally, whether BP's claim is considered a negligence claim or one for contribution, the Settlement Agreement does not help Brown.  The terms of a release are

contractual and its language governs its interpretation. *Kay Pharmacal Co. v. Dalious Constr. Co.*, 276 P.2d 756, 758 (Okla. 1954). By its plain terms, the Agreement only releases Brown from claims by BP for "indemnity, *contribution*, contractual obligation or subrogation in this action *for the monies paid herein.*" (R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 311 (emphasis added).) If BP's claim for remediation damages against Brown is a direct negligence action, the Settlement Agreement does not immunize Brown from liability as it only releases Brown from contribution claims by BP. On the other hand, even if BP's claim is one for contribution, the Agreement does not discharge Brown because BP does not seek the "monies paid herein" (i.e., the money it paid to the landowners to settle their state court case after the cleanup was completed) but rather the money it spent to fix its pipeline and clean up the spill.

Moreover, the Agreement says nothing about releasing Brown from BP's claims in this case. Notably, the Agreement contains provisions wherein Brown and BP agree to release or waive any claims they have against CRA in both the state <u>and</u> federal case. There is no similar reference to the federal case in the provision releasing Brown and BP from their claims against each other. Furthermore, the Agreement states it shall be "final and binding upon all parties and that no claim, be it derivative or otherwise, may ever be made against the parties released *with respect to the matters covered by this Release.*" (R. (Appeal No. 09-5081) Appellant's Appx. Vol. I at 312 (emphasis added).) It is clear from this provision that the Agreement is limited to matters covered–which relate to the landowners' claims in the state court case–not BP's separate action against Brown in this

case.[10]

Neither § 832(H)(2) nor the Settlement Agreement bar BP's claim against Brown in this case, regardless of whether it is properly termed a negligence or contribution action.

D.    B.    Appeal No. 10-5087

Brown argues the district court erred in concluding BP was entitled to an award of attorneys' fees under § 940.  In the alternative, even assuming BP was entitled to an award of fees under § 940, Brown says the amount of the fee award is unreasonable because BP was not entitled to any fees represented by block-billing.

i.Entitlement to Fees

Brown claims that in order to qualify for fees under § 940, a plaintiff must win an award of money damages for injury to its own property.  While BP sought damages for the repair of its pipeline and therefore this case involved a claim for injury to its property, Brown argues that is not enough.  It contends BP must have also prevailed on that claim,

---

[10] Brown alleges BP is not entitled to any damages because (1) it failed to present evidence at trial demonstrating the costs it incurred in repairing its pipeline and (2) the only damages proven were the remediation damages which BP is not entitled to because its claim is a contribution claim barred by the Settlement Agreement and Okla. Stat. tit. 12, § 832(H)(2).  We have already rejected the latter argument.  As to the former, which Brown repeats in Appeal No. 10-5087, Brown acknowledges the jury received invoices containing the costs BP incurred to repair the pipeline.  It nevertheless argues there was no testimony explaining these invoices and they amounted to only a "handful of documents out of the hundreds in evidence."  (Appellant's Reply Br. at 23.)  The jury was instructed it was to determine the facts based on the evidence and the evidence to be considered included the exhibits admitted into evidence.  The jury is presumed to have followed these instructions.  *See Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1287 (10th Cir. 2000).  BP's claim the jury did not understand the invoices because they were admitted without explanation is speculative at best.

i.e., <u>actually recovered</u> damages for injury to its property, and it did not. Rather, the trial revolved around BP's claim for recovery of the money BP spent to remediate the landowners' property. Indeed, according to Brown, the only item of damages BP ever mentioned at trial was the cost to remediate the land–$1,457,190.90. That amount was paid to CRA and did not include any pipeline repair work. And BP presented no testimony regarding damages to its pipeline or any argument requesting such damages. Its damages expert only opined on whether the $1,457,190.90 in remediation costs was reasonable and clarified he was referring to the cleanup costs. He also testified these costs were incurred for the benefit of the landowners. While Brown admits exhibits were sent to the jury which supposedly evidenced damage to BP's pipeline and oil, it says nothing indicates the jury awarded damages based on them. Brown says these exhibits were a few among hundreds–most of which pertained to the remediation costs. There was no testimony concerning them and therefore there was no basis for the jury to believe these exhibits were anything other than invoices concerning the remediation.

BP argues § 940 applies, entitling it to fees, and it presented sufficient evidence from which the jury could and did award it damages for injury to its pipeline and oil. BP established it owned the pipeline and Brown ruptured it, causing the release of over 2,000 barrels of oil. Because the spilled oil could not be used, BP incurred costs in recovering it and transporting it to its plant in Cushing, Oklahoma. To fix its pipeline, BP had to dig up the pipeline, repair it and rebury it. The jury heard evidence regarding the work performed on the pipeline and BP's damages expert discussed the cost of the work on the pipeline itself including cutting out the damaged pipeline, welding in the new pipe and x-

- 23 -

raying the new pipe. Nevertheless, BP claims the cost of repairing the pipeline included more than just these costs; it also included the cost of mobilizing emergency response crews, securing the property, excavating to access the pipeline, removing the contaminated soil from the excavation, obtaining clean backfill, and backfilling and sodding the area. The fact these costs were referred to as cleanup or remediation costs does not alter the fact they were necessary to repair the pipeline. As to the pre-admitted exhibits, BP says they were submitted to the jury and the jury was instructed to consider all the evidence.

"In diversity cases, attorney fees are a substantive matter controlled by state law," *Combs v. Shelter Mutual Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008), in this case Oklahoma law. Whether BP is entitled to fees under § 940 is a question of law. *See Finnell v. Seismic*, 67 P.3d 339, 342 (Okla. 2003). Our review is de novo. *Combs*, 551 F.3d at 1001.

Oklahoma follows the American rule, which holds that attorney fees are not recoverable from an opposing party unless specifically allowed by statute or contract. *Finnell*, 67 P.3d at 343. Here, BP relies on § 940 as the basis for an award of fees. That statute provides in relevant part:

> In any civil action to recover damages for the negligent or willful injury toproperty and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorney's fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action.

"Attorneys' fees under . . . § 940 are available only to prevailing parties in actions for the negligent or willful injury to property." *Truelock v. City of Del City*, 967 P.2d 1183,

1189 (Okla. 1998) (quotations omitted). This statute does not apply to all property rights but only to "those actions for damages for the negligent or willful *physical* injury to [tangible] property." *Woods Petroleum Corp. v. Delhi Gas Pipeline Corp.*, 700 P.2d 1011, 1013 (Okla. 1985); *see also Parks v. Am. Warrior, Inc.*, 44 F.3d 889, 892 (10th Cir. 1995).

There is no question BP suffered injury to its pipeline as a result of Brown's negligence in failing to inform BP it would be excavating in the area of the pipeline strike. And Brown does not seriously contest that BP sought damages for the cost of repairing its pipeline. But Brown says BP did not prevail on its property damages claim because there was no evidence at trial concerning the costs to repair the pipeline. Rather, the only evidence and argument concerning damages at trial concerned the cost to clean-up the oil spill and remediate the landowners' property.

We disagree. For one, BP presented evidence of physical injury to its pipeline and the costs of that repair. The evidence showed Brown ruptured the pipeline, causing the release of over 2,000 barrels of oil. A BP employee testified BP repaired the pipeline, which included having to dig up the pipeline, remove the damaged pipeline, weld in the new pipe, and x-ray the pipeline to ensure the new parts were secure. BP's damages expert referred to some of the invoices reflecting the repair of the pipeline, in particular the invoice from Fechner Pump & Supply, Tulsa Gamma Ray, and Earl-Le Dozer Service. These costs were included in the $1,457,190.90, as evidenced by a cost sheet presented to the jury which set forth the costs and to whom they were paid in arriving at the $1,457,190.90 figure. The parties stipulated BP paid this amount for the remediation

- 25 -

work. While the parties' stipulation stated these costs were for "remediation," they obviously included the costs to repair the pipeline. (R. (09-5081) Appellant's App. Vol. II at 645.)

The jury was instructed that damages could include: (1) "[a]ll costs associated with cleaning up the oil spill, including but not limited to, the costs of recovering the oil, securing the property, testing the soil, excavating and storing contaminated material, loading, transporting and disposing of contaminated material, obtaining backfill, backfilling the area, sodding the area and restoring the property, and related activities"; and (2) "[t]he cost of repairing the pipeline." (*Id.* at 658 (emphasis added).) While it is unclear how the jury reached its damages award, as it was approximately $58,000 less than the stipulated amount, there is no evidence, other than mere speculation by Brown, the award did not include the costs to repair the pipeline. Therefore, BP did prevail on its claim for damages to its pipeline. Of course, the jury's damages award included other damages (as the costs to repair the pipeline did not total $1.4 million). But Brown never requested BP's fees be apportioned between the property damages and the so-called remediation damages; its claim has always been BP is not entitled to any fees under § 940.

In any event, Brown's argument assumes the remediation or clean-up costs are not "damages for the negligent or willful injury to [BP's] property, [i.e. pipeline]." It is mistaken. "Oklahoma law generally provides that an injured party is to be compensated for all detriment proximately caused by the negligence of another. Stated otherwise, an injured party is to be placed in as near a position as possible to that which he would have

- 26 -

been, but for the negligence of the other party." *Brennan v. Aston*, 84 P.3d 99, 101 (Okla. 2003). But Oklahoma has yet to apply this rule to the rupture of a pipeline, which not only causes damage to the pipeline but also causes oil to be lost and to be released onto the surrounding property. "In the absence, therefore, of an authoritative pronouncement from the state's highest court, our task is to regard ourselves as sitting in diversity and predicting how the state's highest court would rule" following "any intermediate state court decision unless other authority convinces us that the state supreme court would decide otherwise." *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569,1574 (10th Cir. 1984).

While the Oklahoma Supreme Court has not directly decided this issue, it has indicated the general principle that a tortfeasor is liable for *all* damages proximately caused by his negligence applies to an award of fees under § 940. *See Finnell*, 67 P.3d at 344-45 n. 29. In *Finnell*, landowner Bill Finnell entered into a contract with Jebco Seismic, Inc., giving Jebco permission to conduct a seismic survey on the Finnell's property in return for $5,200 plus damages to specified crops. Jebco hired PGS Onshore, Inc. (PGS) to do the survey. When Finnell discovered the survey had caused more damage than covered by the contract, he demanded payment from Jebco. Jebco refused and Finnell filed suit. Jebco filed a third-party petition against PGS. Ultimately, the complaint was amended to add Finnell's wife as a plaintiff and PGS as a defendant. *Id*. at 341-42.

Prior to trial, Jebco and PGS admitted liability and a jury awarded the Finnell's $26,000 in damages. The Finnells then sought attorney fees under § 940. Jebco and PGS

- 27 -

argued this was a contract claim, not a claim for physical injury to property. The

Oklahoma Supreme Court disagreed. It said (1) the complaint had the factual allegations

sufficient to give the defendants' notice of the tort claim, (2) Oklahoma has recognized

the same set of facts may support both a contract and tort claim, (3) the jury instructions

did not limit the cause of action to contract and (4) "[t]he same quantum of monetary

recovery is plaintiffs' due whether their claim be deemed actionable in contract or in

tort." *Id*. at 344-345. Discussing the nature of the damages, the court noted: "The

measure of a promise-based obligation's breach is the amount which will compensate the

injured party for all the detriment proximately caused by the breach . . . . Tort reparations

include compensation for all proximately caused harm, whether foreseeable or not." *Id*.

at 345 n. 29. Because the jury could have found Jebco and PGS liable in tort for physical

injury to property, the court concluded § 940 applied.[11] *Id*.

---

[11] Although unpublished and therefore not binding precedent, *see* 10th Cir. R. 32.1(A), we nevertheless find *Hertz Corp. v. Gaddis-Walker Elec. Inc.*, highly persuasive. 125 F.3d 862, Nos. 96-6022, 96-6136, 1997 WL 606800 (10th Cir. 1997) (unpublished). There, Hertz hired Gaddis-Walker to move two power stations used to supply power to Hertz's computer equipment, which in turn was used to process rental car reservations. To facilitate the move, Hertz planned to shut down its computer system for eight hours. However, after Gaddis-Walker moved the power stations, it improperly rewired them. The improper rewiring caused damage to Hertz's computers which forced Hertz's business to remain shut-down longer than the planned eight hours. Hertz filed suit against Gaddis-Walker alleging negligence and seeking property damages and lost profits. Hertz prevailed at trial and the court awarded attorneys' fees under § 940.

On appeal, Gaddis-Walker argued Hertz was only entitled to recover attorneys' fees for its property damages claim and not for its lost profits under § 940. *Id.* at *8. We disagreed. We rejected Gaddis-Walker's attempt to separate Hertz's negligence claim into a property damages claim and a lost profits claim. *Id.* at *9. Rather, we determined only one claim was at issue—negligence—and that negligence caused both Hertz's property damages and its lost profits as the lost profits were a direct and foreseeable

- 28 -

From *Finnell,* it appears that the Oklahoma Supreme Court would conclude the proper measure of damages not only includes the costs to repair the pipeline but also to recover and remove the spilled oil from the surrounding property and to restore that property to its pre-negligence state. Therefore, BP's damages in this case included not only the costs to repair its pipeline but also the so-called remediation costs. The jury was instructed as such and Brown does not dispute that BP presented evidence concerning the remediation costs and the jury's damages award included these costs. As a result, regardless of whether BP actually recovered the costs it incurred in repairing the pipeline, it obviously recovered the costs it incurred in recovering its oil and remediating the surrounding property. Because these costs constitute "damages for the negligent . . . injury to BP's property [i.e., its pipeline]," BP prevailed on its property damages claim and is entitled to fees under § 940.[12]

---

result of Gaddis-Walker's negligence. *Id.*

Similarly, Brown's argument in this case is essentially that BP had two claims, one for property damage and one for remediation costs. However, only one claim went to the jury—negligence/negligence per se. And that negligence caused BP to incur property damages to its pipeline, as well as damages in cleaning up the oil spill.

[12] Brown relies on *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256 (10th Cir. 2007). There, Weyerhauser filed suit against Brantley seeking to have him and his cattle removed from his property. Brantley asserted ownership over the property via adverse possession or in the alternative claimed he had a prescriptive grazing easement on the property. The court found in favor of Weyerhauser and awarded it $10,000 in lost profit damages because it was unable to resume timber operations due to Brantley's grazing activities. The court also awarded Weyerhauser its fees under § 940. On appeal, Brantley argued the court erred in awarding fees because Weyerhauser only recovered its lost profits and did not recover any damages for physical injury to property. *Id.* at 1268. We agreed. Although Weyerhaeuser had alleged trespass, which is a willful injury to property rights by physical invasion, the Oklahoma Court of Appeals had held § 940 does not apply where the plaintiff recovers only nominal damages on a trespass claim. *Id.*

ii.Amount of Fees

Brown says the court erred by awarding 60 percent ($58,816) of the fees represented by block billing. It argues that in order to recover fees, BP had the burden of proving the reasonableness of "each dollar, each hour, above zero." (Appellant's Op. Br. (Appeal No. 10-5087 at 21) (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).) BP did not present any evidence as to what, if any, portion of the block billing represented time spent on this case, as opposed to the state court action wherein BP was not the prevailing party and not entitled to fees. And the district court itself found it could not determine which portion of the block billing was reasonable and necessary for this case. Therefore, Brown says BP failed to meet its burden and it was not entitled to any of the fees represented by block billing.

BP claims the district court properly determined BP was entitled to 60% of the fees represented by block billing. At the hearing to determine the amount of fees, BP's attorney testified that the issues and activities in the state and federal case significantly overlapped because the central issue in both cases was who was at fault for the pipeline

And, while Weyerhaeuser had presented evidence that Brantley's cattle damaged trees on the property, the district court did not award damages on that basis. *Id.* Therefore, because Weyerhaeuser only recovered damages for lost profits and not for physical injury to its property, it was not entitled to fees under § 940. *Id.* at 1268-69.

*Weyerhaeuser* is distinguishable. Weyerhaeuser did not recover any property damages. And there is no indication that the lost profits damages (which were awarded) flowed from physical injury to Weyerhaeuser's property as opposed to Brantley's unlawful presence on the property. In this case, on the other hand, there is no indication the jury's damages award did not include the costs BP incurred in repairing its pipeline (property damage) as these costs were included in the stipulated amount. In any event, the damages award certainly included the costs BP incurred to clean up the oil spill and remediate the surrounding property—costs which flowed directly from the physical injury to BP's pipeline.

- 30 -

strike. In fact, the discovery was the same in both cases and most of the depositions taken were used in both cases. Therefore, the work performed on the state case was inextricably intertwined with and necessary for the federal case. Consequently, the court properly granted BP a percentage of the fees represented by block billing.

Our review is for abuse of discretion. *Combs*, 551 F.3d at 1001. "'Block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Harolds Stores, Inc. v. Dillard Dep't Stores*, *Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996); *see also Flying J Inc. v. Comdata Network, Inc.*, 322 Fed. Appx. 610, 617 (10th Cir. 2009) (unpublished) ("So-called block billing consists of attorneys recording large blocks of time for tasks without separating the tasks into individual blocks or elaborating on the amount of time each task took.").[13] In this case, the block billing represented time spent on two different cases (the instant case and the state court lawsuit), rather than different tasks in the same case.

Like the district court, we have not uncovered any Oklahoma cases addressing block billing. However, Oklahoma requires its attorneys to keep detailed time records showing the work performed. *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 663 (Okla. 1979); *see also Finnell*, 67 P.3d at 346 (applying *Burk* to determination of reasonable fees under § 940). From these detailed records, the court must determine a

---

[13] Unpublished opinions are not binding precedent. 10th Cir. R. App. P. 32.1(A). We mention *Flying J* as we would an opinion from another circuit, persuasive because of its reasoned analysis.

"baseline fee by multiplying hours expended times the attorney's hourly rate." *Finnell*, 67 P.3d at 346. The use of block billing makes it difficult to determine a baseline fee when the block billing covers work on two different claims, one for which attorneys' fees are allowed by § 940 and one for which attorneys' fees are not permitted. It also makes it difficult in cases such as this where the block billing covers work on two different cases, only one of which allows a fee award.

While Oklahoma has not addressed the latter situation, it has addressed the former and allows for the fees to be apportioned between the fee-eligible claim and the non-fee-eligible claim. *See Sisney v. Smalley,* 690 P.2d 1048, 1051 (Okla. 1984). Indeed, in *Sisney*, the Oklahoma Supreme Court rejected the defendant's argument that the plaintiff was not entitled to any fees because her claims included one which was fee-eligible and one which was not. 690 P.2d at 1051. The court said apportionment was the appropriate remedy. *Id.*

This Court has addressed block billing and recognizes its shortcomings. *See Flying J, Inc.*, 322 Fed. Appx. at 617 (stating "[u]se of this rather imprecise practice may be strong evidence that a claimed amount of fees is excessive"); *see also Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998) ("The use of billing practices [such as block billing] that camouflage the work a lawyer does naturally and quite correctly raise suspicions about whether all the work claimed was actually accomplished or whether it was necessary. This concern is particularly important in a situation where a party is seeking to have his opponent pay for his own lawyer's work."). Nevertheless, we have never mandated a reduction or a denial of a fee request based on block billing. *Cadena v.*

*Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000). "[T]he decision whether block billing indicates an unreasonable claim should remain with the district court who should be allowed to exercise its discretion accordingly." *Flying J Inc.*, 322 Fed. Appx. at 617.

Based on the above, we cannot say the district court abused its discretion in awarding BP 60% of the fees represented by block billing. Neither Oklahoma nor this Court has prohibited an award of fees when those fees are represented by block billing. Brown says *Sisney* is not controlling because that case involved claims arising in the same case, where the court awarding fees is intimately familiar with the parties, attorneys and the complete course of litigation. Here, the district court did not preside over or make any decisions in the state court action. While *Sisney* is distinguishable in that sense, we do not believe the difference matters, especially under the facts of this case.

The magistrate held a hearing concerning the reasonableness of BP's fee request. At the hearing, BP's counsel testified there was "a lot of overlap" between the state and federal court cases and indeed, Brown used the state court lawsuit in the federal court action to demonstrate the costs BP incurred to remediate the landowners' property were unreasonable because the landowners were dissatisfied with the remediation. (R. (Appeal No. 10-5087) Appellant's App. Vol. II at 648.) He also said that the work recorded for both cases, such as discovery, would have been done even had the state court action never been filed. Similarly, BP's attorneys' fees expert testified the state and federal court actions were interrelated as the operative facts were the same in each case–the pipeline strike and who caused it. In addition to this testimony, the record shows Brown issued the same discovery requests to BP in both the state and federal cases and the

depositions of many of the witnesses were designated for use in both cases. Moreover, the parties' witness and exhibits lists were similar in both cases. And the parties participated in a mediation conference in an attempt to settle both cases. Therefore, there was more than sufficient evidence for the district court to determine the federal and state court actions overlapped. The fact the court did not preside over the state court action is not determinative in light of these facts. Due to this overlap, it was not unreasonable for the district court to conclude BP should be compensated for a portion of the time (60%) represented by block billing.

We **AFFIRM** the judgment in Appeal No. 09-5081 and **AFFIRM** the award of attorneys' fees in Appeal No. 10-5087.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge